# Moulton *v.* Reid.

*Bill in Equity to determine Contested Municipal Election.*

1. *Certificate of election; force and effect of.*—Where a public officer is charged by law with the duty of ascertaining and declaring the result of an election, and issuing a certificate of election to the person elected, such certificate is conclusive evidence of the result and of the right of such person to the office; except when statutes authorize a contest, and it is commenced, or on *quo warranto*, or information in the nature thereof, to determine the right to the office, when the certificate is *prima facie* evidence, imposing the burden of proof on him who assails it.

2. *Same.*—This rule is not varied, because a prior incumbent contesting the election is in office, and is authorized to hold until his successor is elected and qualified.

3. *Mobile, charter of; provision as to contested election.*—The provision of the charter of the city of Mobile for the trial of contested elections to municipal offices before the circuit or city judge, is not inadequate, because it does not specifically define the mode of contest and prescribe the causes therefor; the jurisdiction given carries with it every thing necessary to make it effectual, and the common law, in the absence of statutory provisions, supplies the causes of contest.

4. *Contested election; jurisdiction of chancery as to.*—A court of chancery is not the proper tribunal for the trial of a contested municipal election, where the charter or a general law provides for such contest; and it has no jurisdiction to enjoin the person declared elected from using his certificate of election, or from qualifying and entering upon the duties of the office, or to otherwise try the right to the office—although such relief is asked by an incumbent under a former election, and entitled to hold until his successor is elected and qualified, who charges that by falsification of the ballots and the fraud of the election officers, the certificate of election was withheld from him, and given to his opponent.

5. *Municipal offices.*—The legislature has full power to determine in what manner municipal officers shall be elected or appointed, the mode and causes for which such election may be contested, and whether or not a jury trial shall be allowed.

6. *Practice on appeal.*—Under the statute (§ 3510 R. C.) it is the duty of the court, when a case comes before it a second time on appeal, to disregard its former ruling if deemed erroneous; and although the statute in terms is addressed only to the appellate court, yet, if the lower court departs from the former ruling, and this court, on a second appeal, is of opinion that the lower court decided correctly, its judgment must be affirmed, whether it conforms to or disregards the former decision.

7. *Overruled case.*—*Reid v. Moulton*, 51 Ala. 255, overruled.

VOL. LIV.

APPEAL from Chancery Court of Mobile.

Heard before Hon. H. AUSTILL. ↗

This cause was before the court at its June term, 1874, and is reported *Reid v. Moulton*, in the 51st volume of Alabama Reports, page 255. The case is so fully reported there that it is unnecessary here to give more than a brief synopsis.

Moulton was mayor of the city of Mobile, entitled under its charter to hold until his successor was elected and qualified. At the municipal election, held, pursuant to the charter, on the second day of December, 1873, Moulton was a candidate for re-election, and John Reid, Jr., was his principal competitor, although some votes were cast for J. M. Lomery. Moulton alleges, "on information and belief," that he received a plurality of the legal votes cast for said office of mayor; that the inspectors in one of the wards, in pursuance of a conspiracy, falsified returns of the result at that ward; that a number of ballots cast at that ward for him were abstracted, and ballots substituted for Reid, and that these ballots, fraudulently put in the ballot box, were counted in the returns in favor of Reid, in pursuance of such conspiracy, thereby reversing the result of the election; that Dane, the sheriff, whose duty it is under the charter to ascertain and declare the result of the election, had counted the ballots fraudulently inserted in the box at that ward, and upon the count thus made, has given Reid a certificate of election to the office of mayor.

The bill further alleged, that the provisions of the city charter were so vague as to the method of contest, and as to the causes of contest, that he could not contest the election in the manner there provided, "until the charter is amended;" that the provisions of the charter providing for a contest were unconstitutional, as they neither gave a jury trial, nor an appeal to any court having power to empannel a jury to try issues of fact, and that the certificate entitled Reid to qualify, and enjoy the emoluments of the office, and unless restrained, he would qualify and take possession of the office, &c.

Reid was made a defendant, and required to answer, &c., without oath, and the bill prayed an injunction, "enjoining him from exercising any of the duties or functions of mayor of the city of Mobile, or in any way interfering with [Moulton's] right to perform the duties or functions of mayor of the city of Mobile, and to enjoy the privileges and emoluments thereof, until the further order of the court, and that upon the final hearing, your Honor will take jurisdiction of the whole case, and that the same may be heard and deter-

mined in this honorable court, and that your orator may be declared duly elected mayor of the city of Mobile, and may be continued and confirmed in his office," &c.

The bill further alleged that the poll lists, ballots and returns of the election were in the hands of Dane, the sheriff, who threatened to turn them over to the city clerk, as the charter required, and that the latter, in pursuance of the charter, would burn and destroy them, whereby Moulton would lose valuable evidence, and all traces of the frauds would be destroyed. Dane is made defendant, and an injunction prayed to prevent the destruction of the ballots, &c., and requiring him to preserve them for production, under the orders of the court, as evidence in the cause, &c. The bill also prayed for general relief. Bond having been given in accordance with the fiat of the chancellor, an injunction issued as prayed.

Reid, in his answer, positively disclaimed all knowledge or connection with any fraud, &c., and, on information and belief, denied that any fraud had been committed, but averred, on the contrary, that he had received a plurality of the votes cast and was duly elected, &c.

Dane answered, denying all knowledge of any fraud, and stating that he was proceeding to count the votes returned, as he understood his duty required, when he was required by *mandamus* from the circuit court to issue a certificate to Reid, who, by the returns of the inspectors, had received a plurality of votes cast for the office of mayor, and he pleaded its judgment in defense of his action, &c.

Demurrers were also put in by Reid on the grounds, among others, that the case presented was not within the jurisdiction of the court; that complainant had a complete and adequate remedy, under the provisions of the charter, to contest the election, &c.

On the coming in of the answers, the defendants moved to dissolve the injunction for want of equity, and on the denials in the answer, and the chancellor (Hon. A. C. Felder) overruled both motions, and from this decree the former appeal was taken. This court thereupon affirmed the decree of the chancellor.

The cause remaining undetermined in the chancery court, it "came on further to be heard," at its January term, 1875, on the demurrers in the answer of Reid, and the chancellor (Hon. H. Austill) sustained the demurrers, dissolved the injunction and dismissed the bill.

This decree is now assigned as error.

[Moulton v. Reid.]

E. S. DARGAN, for appellant.*

HAMILTONS, and R. H. SMITH, *contra.*

BRICKELL, C. J.—The 13th section of the act "to reorganize the municipal government of the city of Mobile," &c., provides, the sheriff of the county shall give notice of municipal elections, appoint inspectors and returning officers : The returning officers are required to make and certify the returns to the sheriff, who declares the election of, and gives certificates of election to the persons elected.—Pamph. Acts, 1869–70, p. 453. It is shown by the bill that at the proper time an election for the office of mayor of the city of Mobile was held, under the supervision of inspectors and other officers, the regularity of whose appointment is not questioned. Returns of the election were made to the sheriff, and he declared the appellee, Reid, was elected Mayor, and gave him the certificate of election. When there has been an authorized election to fill a public office, there must be not only a mode prescribed by law of ascertaining its result, but there must be of necessity some mode of furnishing to the person elected evidence of the fact on which he can enter into the office, and of certifying the fact to the people who have the right to demand the performance of official duty. The fact cannot be permitted to rest in doubt or uncertainty, or subject to inquiry and litigation, whenever authority is exercised. A certificate issued by the sheriff, a public officer, charged with the duty of conducting the election, ascertaining and declaring its result, is the evidence of election the statute prescribes. When issued, it is conclusive evidence of the result of the election—of the right of the person to the office to which it shows him to have been elected, except when statutes authorize a contest of the election, and the contest is commenced, or on an information in the nature of a *quo warranto*, to determine the right to the office. In these proceedings it is *prima facie* evidence of the right, imposing the burden of proof on those who impeach its fairness.— Brightley's Lead. Elec. Cases, 319, note ; *Huselman v. Rems,* 41 Penn. 314; *Kerr v. Trego,* 42 Penn. 296 ; *State v. Churchill,* 15 Minn. 459 ; *Atherton v. Sherwood, ib.* 221 ; *People v. Miller,* 16 Mich. 56 ; *Commonwealth v. Baxter,* 35 Penn. 263 ; *People v. Jones,* 17 Wend. 83 ; *People v. Vail,* 20 Wend. 12 ; *State v. Governor,* 1 Dutcher, 344 ; *Hudley v. Mayor,* 33 N. Y. 606 ; *Morgan v. Quackenbush,* 22 Barb. 79. Nor is the rule varied

*The arguments of counsel are so fully given in the former report of the case that it is unnecessary to repeat them.

because a prior incumbent, contesting the validity of the election, is in office, and authorized to hold until his successor is elected and qualified.—*People v. Head*, 25 Ill. 325. When an incumbent of a public office is authorized to continue in office, beyond the duration of the term fixed, until a successor is elected and qualified, the object is to prevent a vacancy in the office, and the suspension of official duty. The extension is for public benefit, and not to confer on the incumbent a right to continue, when another has the legal right to enter into the office. It was the duty of appellant to remain in the office of mayor until the election and qualification of his successor. It was not his duty or right to remain after the election and qualification of the appellee, Reid. The certificate was evidence of Reid's election, as conclusive on the appellant, as it was on any other citizen; and as conclusive on him, as it would have been if he had not been a rival candidate for the office, or if it had not been his duty to remain in office until the election and qualification of his successor. The claim preferred by the bill, is, that he is his own successor, and in that right entitled to hold the office. To support this claim he proposes to remain in the office, and asks that Reid be enjoined from the use of the certificate of election, which it is conceded by the bill, at law, entitles him to enter into the office, and consequently compels the appellant to vacate it. If such is the effect of the certificate at law, it is difficult to conceive how it can be of less force in equity. It is as evidence of the fact of election, which confers the right to the office, that the certificate operates. Equity follows the law, and "when a rule, either of common, or statute law, is direct, and governs the case with all its circumstances, or the particular point, a court of equity is as much bound by it as a court of law, and can as little justify a departure from it."—1 Story's Eq. § 64. Generally, the rules of evidence are the same in equity and at law. The policy and necessity which is the reason of the rule declaring the effect of the certificate of election, as evidence, is of the same weight in equity as at law, and neither the one court, or the other, can dispense with or depart from the rule.

It is urged the bill discloses the certificate is false, infected by fraud, and that the appellee was, in truth, elected mayor, and is entitled to the office. Be this so, the law has appointed a remedy, by a contest of the election, when the fraud may be ferreted out, the truth of the election ascertained, and the right declared and enforced, more speedily than through any of the ordinary remedies of the common law, or by bill in equity. The charter of the city provides,

"if any municipal election shall be contested in the city of Mobile, it shall be before the judge of the circuit court of the Mobile district, or judge of the city court of Mobile. Testimony may be taken by a justice of the peace, or before a commissioner appointed by the judge trying the cause, for that purpose, or he may cause the witnesses to come before him, and depose in the case." The ballots are required to be sealed up, and delivered to the city clerk, who, if there is a contest, is required to deliver them to the judge trying the same. The contest is commenced by an application to the judge, and notice to the party whose election is disputed, within fifteen days after the election. After an examination of the ballots, poll lists, and a consideration of such other evidence as may be introduced, the judge is required to pronounce judgment on the case.—Pamph. Acts, 1865–6, p. 208.

This remedy, it is insisted, is inadequate, because the mode and causes of contest are not specified. The mode of contest is distinctly declared to be by application to the judge of the city or circuit court. The causes of contest are not expressly defined, nor was it necessary they should be ; for the common law declares them, and affirming them by statute would not render them more certain or add to their force. Whatever of fraud, illegality, or irregularity occurred in the election which varies its result, is ground of contest. The statutory provisions are very general in their terms, yet very clearly confer on the circuit or city court judge, jurisdiction of the contests of municipal elections. All reasonable and necessary incidents—all that is proper to render the exercise of the jurisdiction effectual, is impliedly granted.—Sedgwick on Stat. & Cons. Law, 228. The rule is very general that the common law supplies all that is necessary to give effect to general statutory provisions, and, "whenever a power is given by a statute, every thing necessary to the making of it effectual is given by implication; for the maxim is *quando lex aliquid concedit, concedere videtur et id per quod devenitur ad illud.*"—9 Bac. Ab. 219–20 ; *People v. Eddy*, 57 Barb. 593.

It is insisted the statutory provisions are violative of the Constitution because a trial by jury is not authorized. Of this objection it may be said, as was said of a similar objection, in a similar case, by the supreme court of Pennsylvania, if it is of any force, it has a *fearful sweep*. All the general laws authorizing the contests of elections for county officers, (except judges of probate,) of elections for justices of the peace and constables, commit the jurisdiction to the judge of probate, and unless the eligibility of the person elected, or mal-conduct, fraud, or corruption, on the part of

a clerk, inspector, or returning officer, is the ground of contest, a trial by jury is not authorized. If these are alleged, the person whose election is contested may demand a trial by jury. Such mode of trial is not compulsory, but is his personal privilege. The chancellor, not the court of chancery, has jurisdiction of the contest of an election of circuit judge, and a trial by jury is required only when claimed by the person declared elected, and the election is contested on the like ground. If this objection is sound, these statutes are violative of the Constitution. A municipal corporation is of legislative creation, and its offices are mere agencies or instrumentalities through which corporate power is exercised, and corporate duty discharged. It is within legislative competency to provide for filling these offices either by election or appointment, or any other mode deemed expedient. If an election by the electors residing within the territorial limits of the corporation, is the mode prescribed, the legislature could declare the certificate of election final and conclusive evidence of the right to the office. It may or not authorize a contest of the election, and if authorized, the mode of contest, and of trial, rests absolutely in legislative discretion. The tribunal which shall hear and determine the contest, whether it shall be either of the ordinary judicial tribunals, or a judge thereof, or any known officer of the law, the legislature have full power to determine, and without violating constitutional limitations, a trial by jury may, or may not, be authorized.—*Ewing v. Filley*, 43 Penn. 384.

The case as presented is, then, in the most favorable aspect for the appellant, the claim of a pure legal, statutory right, for the enforcement of which the statute furnishes a particular remedy. The jurisdiction of a court of equity is as clearly defined as the jurisdiction of courts of law. It never intervenes for the the protection of rights, or the prevention of wrongs, when the ordinary legal tribunals are capable of affording sufficient redress. Mr. High, in his recent work on Injunctions, states very forcibly and clearly, the principle which is fatal to the bill, if there were not other grave and unanswerable objections to it. The principle is, that, "when a positive statutory remedy exists for the redress of particular grievances, a court of equity will not interfere by injunction, and assume jurisdiction of the questions involved, nor will it enjoin proceedings under such statutory remedy, since such interference would place the judicial above the legislative power."—High on Inj. § 31.

Suppose the statutory remedy is inadequate, and by it redress of the wrongs of which appellant complains, cannot be obtained, the courts of common law of general jurisdiction

[Moulton v. Reid.]

have an inherent power, now regulated by statute, to inquire into the regularity and validity of the title to municipal offices, whether acquired by election or otherwise, on *quo warranto*, or an information in the nature of a *quo warranto*.— Dillon on Munic. Cor. §§ 141, 210, 680, 714. Of this jurisdiction they · are not deprived because the legislature may prescribe special statutory remedies, from which the same redress may be obtained, unless it appears, with unequivocal certainty, the legislature intended to take it away. The general principle applies, that a special statutory remedy is cumulative, not excluding the ordinary common law remedies, unless such is the manifest legislative intent.—Dillon on Munic. Cor. §§ 141-2. If the special statutory remedy by contest is inadequate—if it is so loosely prescribed as to be incapable of pursuit, or if it is in violation of the Constitution, as the appellant so strenuously insists, the unembarrassed remedy by an information in the nature of *quo warranto* remained to him, and remaining, excluded the jurisdiction of a court of equity. On this point the authorities are harmonious, and speak in unvarying language.—*Cochran v. McLeary*, 22 Iowa, 75; *Detroit v. Board of Public Works*, 23 Mich. 546; *Tappan v. Gray*, 9 Paige, 507; S. C. 7 Hill, 259; *People v. Draper*, 24 Barb. 265; *Undergraft v. Craus*, 47 Penn. 103; *Mickles v. Rochester City Bank*, 11 Paige, 118; *State v. Jarrett*, 17 Md. 310; *Markle v. Wright*, 13 Ind. 548; *Commonwealth v. Leech*, 44 Penn. 332; *Hulseman v. Reeves*, 41 Penn. 396. In the work on Injunctions, to which we have previously referred, it is said: "A court of equity is not the proper tribunal for determining disputed questions concerning the appointment of public officers, or their right to hold office, such questions being purely of a legal nature, and cognizable only by courts of law."—High on Inj. § 798. And· again, it is said, when a specific remedy by *quo warranto* exists at law for the unlawful usurpation of an office, by one not entitled thereto, a court of equity will not entertain jurisdiction of the offense, and will not grant an injunction against the incumbent of the office.—*Ib.* § 799. Judge Dillon, in his treatise on Municipal Corporations, states that "the right to a municipal office is a franchise, and may be tested by an information in the nature of a *quo warranto*, but cannot be determined ordinarily unless by statute provision, on a bill in chancery to enjoin, or in any other indirect or collateral proceeding."—Dillon on Munic. Cor. § 210.

In *Ex parte* John Reid, Jr., at the January term, 1874, I expressed the opinion, the special remedy prescribed by the charter for a contest of municipal elections, excluded the common law remedy by information in the nature of *quo*

*warranto.* In arriving at this conclusion, not only the words of the statute, the purpose of its enactment, but the general laws of the State on the subject of contested elections and *quo warranto*, were consulted. The general legislative policy is, that when the validity of an election is the subject of a statutory contest, *quo warranto* shall not lie.—R. C. § 3092. I have nothing to add to, or to subtract from the views on this point then expressed. The statutory, or common law remedy, either could only have been pursued by the appellant after his vacation of the office, and Reid's entry into it. This at last is the "irreparable injury" the court of chancery was invoked to prevent. It was not injury—it was mere obedience to the law. "Where a positive statutory remedy exists and may be pursued, equity cannot interfere on the ground of irreparable mischief." The "law injures no one," is a maxim which inculcates obedience to law. Where positive law in point of fact injures, it is the legislature which must furnish the corrective; courts cannot."—Brown's Appeal, 66 Penn. 157.

The last proposition pressed in support of the bill, is, that the interference of equity was necessary to prevent the destruction of the ballots and poll lists, which were indispensable evidence of the appellant's election and title to the office, and it is said a court of equity has jurisdiction to preserve evidence when in danger of being lost, before the matter to which it relates can be made the subject of judicial investigation. It would seem a sufficient answer to say the bill is not framed on any such view. No relief as auxiliary to any proceeding at law, is prayed, nor is any such proceeding contemplated. On the contrary, the court is specially prayed to take jurisdiction of the whole case, and by decree finally to ascertain and declare the result of the election, thus seeking the entire and final remedy in equity. Nor is there any necessity for equitable interference to preserve the ballots and poll lists. If the appellant had contested the election in the mode prescribed, they must, by the words of the charter, have been delivered to the judge before whom the contest was instituted, who was commanded to examine them before pronouncing judgment.

It is last urged the decree must be reversed, because the opinion rendered in this cause at the June term, 1874, of this court, was conclusive on the chancellor, as to the law of the case. For more than forty years, the conservative rule on which this court proceeded, was, that an opinion of this court, however erroneous, was the law of the case in which it was rendered, and could not be questioned in the primary court, or on a second appeal. The rule was sometimes ap-

plied to the affirmance of judgments, working great individ-
ual hardship and injustice.  The legislature not only abro-
gated the rule, but expressly commands this court, if the
case returns here on a second appeal, to pronounce judg-
ment, without regard to the former ruling, if that is deemed
erroneous.—R. C. § 3510.  We may regret, but we cannot
avoid the unseemly attitude in which the statute may place
the court, of reversing at a subsequent term, the judgment
it may at a former term have rendered in the cause.  The
statute is addressed in terms only to this court, but its man-
ifest purpose is the abrogation of the former rule.  Whether
it is to be observed by the primary courts, is not a question
of much practical importance.  The inquiry here on appeal,
is not now whether the decree or judgment of the primary
court conforms to the former opinion, but its correctness in
point of law.  If correct, whether conforming to, or departing
from the decision of this court, it must be affirmed.

We cannot doubt the bill is devoid of equity.  The de-
cision in *Moulton v. Reid,* 51 Ala. 255, must be overruled,
and the decree of the chancellor affirmed.