# WHEELING.

ALDERSON *v.* COMMISSIONERS.

*(GREEN, JUDGE, absent.)

Submitted June 17, 1889.—Decided June 28, 1889.

1. INJUNCTION—JURISDICTION—EQUITY—ELECTIONS.
    Equity has no jurisdiction to enjoin commissioners of a County Court from certifying to the governor the result of their canvass

*On account of illness.

of the vote in their county for a representative in the congress of the United States.

2. INJUNCTION—CONTEMPT.

An appeal from a decree in a suit in equity will not bring up for review an order discharging a rule to show cause why the party shall not be punished for contempt in disobeying an order of injunction made in such suit.

*J. W. St. Clair, Brown & Jackson* and *O. Johnson* for appellant.

*A. Burlew* and *J. A. Hutchinson* for appellees.

BRANNON, JUDGE :

John D. Alderson presented to the judge of the eighth circuit a bill in equity stating in effect, that at the election in this state on November 6, 1888, he received a large number of votes for representative in the Congress of the United States for the Third district of this state; that the opposing candidate was James II. MacGinnis, who received a large number of votes for the same position; that the result of the election in each county of said district except Kanawha had been certified to the governor; that either he or Mac-Ginnis had been elected; that the result depended on the ascertainment of the result in Kanawha county; that the defendant commissioners on November 12th met to ascertain the result in said county; that returns as certified from the precincts showed, that said Alderson had received 3,329 and said MacGinnis 4,658 votes; that said Alderson demanded a re-count, which re-count was made, whereby the result was for said Alderson 3,341 and for said MacGinnis 4,638 votes; that said commissioners refused to accept such re-count except as to certain precincts, and as to others adopted the original returns, rejecting the result of the re-count there, and entirely rejected the votes cast at two precincts, whereby the result was for said Alderson 3,325 and for said MacGinnis 4,660 votes, which would elect said MacGinnis. The bill states, that the said Alderson excepted to this action of the commissioners and during the progress of the canvass excepted to various rulings and decisions of the commissioners, which are detailed in the bill. The bill also states, that the commissioners refused to settle and sign

bills of exceptions touching these rulings, and that said Alderson by a proceeding in *mandamus* in this Court obtained a mandate from this Court requiring them to do so; and that they were bound to make a record of all poll-books, ballots, packages, ballot-boxes, and tally-sheets, tally-sheets on the recount and evidence, and their rulings and actions; and that he had tendered them a bill of exceptions representing the same, but they had not yet settled and signed it; and that, as soon as settled and signed, he would apply to the Circuit Court of Kanawha for a writ of *certiorari* to correct such erroneous proceedings of said commissioners; that, in order that justice might be done, it was important to him, that said commissioners should not send to the governor certificates of the result of said election in said county according to their said decision; that it was the intention of the commissioners, as soon as they should sign said bill of exceptions and before he could have time to apply to said Circuit Court and obtain a *certiorari* and give bond, to certify said result to the governor according to their erroneous decision, and that they intended so doing for the very purpose of defeating said Alderson's right to review said proceedings; that he had asked said commissioners to consent not to certify said result, until he could apply for the *certiorari*, but they declined to say what their intention was; that though they had announced their decision, they were keeping it off the record, until the bill of exceptions should be signed, and he charged that they had already made out a certificate ready to file with the governor, as soon as the exception should be signed, and their decision entered of record, and that they had prepared it, that there might be as little delay as possible in filing it with the governer, and that thereby the said Alderson would be defeated in his attempt to review said proceedings. He prayed an injunction to restrain the commissioners from certifying to the governor the result of said election. On December 15, 1888, such injunction was awarded. Said Alderson on January 4, 1889, filed in court his affidavit stating, that process upon the injunction-bill was served on two of the commissioners December 15th, but does not give date of service on the other; that on December 15, 1888, he presented his petition for a *certiorari* to re-

view such proceedings, and it appears it was allowed 17th December, 1888, with an order restraining them from certifying said result, and that he believes the said commissioners had full notice thereof; and that notwithstanding such notice and service of process on said injunction said commissioners did certify such result to the governor; and on said Alderson's motion a rule was awarded against them to show cause, why they should not be punished for their contempt in so violating the injunction. Afterwards the defendants moved the court to quash the said rule for contempt as improvidently awarded and for want of jurisdiction, and the rule was quashed, and defendants discharged therefrom. Afterwards the defendants moved the court to dissolve the injunction, and the same was dissolved for want of jurisdiction, and the bill dismissed.

Said Alderson appealed to this Court. He assigns that the court erred in dissolving the injunction and dismissing the bill, and in discharging the rule for contempt.

The defendants contend, that there was no jurisdiction in the Circuit Court to entertain the injunction, and that it properly dissolved it and dismissed the bill. No principle of the law of injunction is better settled, than that injunction does not lie to determine questions of appointment to public office and the title thereto, as they are of purely legal nature and cognizable only in courts of law. 2 High, Inj. § 1312; High, Extr. Rem. § 619; *Kilpatrick* v. *Smith*, 77 Va. 347; Judge GREEN's opinion and authorities cited in *Dryden* v. *Swinburn*, 15 W. Va. 234. This is not, however, a proceeding to try title to an office, but to restrain county commissioners from sending to the governor the result of their count of the votes for a representative in the United States Congress. Does an injunction lie in such case?

Our statute provides, that the commissioners shall ascertain the result of the election in their county and certify it to the governor, who is to ascertain, who is elected, and make proclamation thereof. In *Dickey* v. *Reed*, 78 Ill. 261, it was held, that a court of chancery has no power to restrain by injunction a board of canvassers from canvassing the returns of an election, where the law, under which the election was held, neither in terms nor by implication confers such power,

and where there are no facts before the court, which require it to take judicial cognizance and hear and adjudicate and decree; and that, valuable as is the remedy in its proper sphere, it must not be extended to doubtful cases, or to accomplish ends, where there are other adequate remedies. The opinion in that case is elaborate and well sustained. I quote some of its passages:

"If the court may exercise this jurisdiction in cases of doubt, or even where there is no doubt, of the result, a few * * * persons might, and probably would, be induced, from the heat and strife always engendered in such elections, to resort to a bill and injunction, and thus for years thwart the will of the people. * * * Public policy does not require such a jurisdiction, even if it could sanction it. If the power were admitted, where would its jurisdiction end? * * * Sanction the power in this case as inherent in the court of chancery, could any ingenuity suggest reasons which should forbid the application of the same rule to every case we have above supposed, or any election case where fraud is alleged? In this case alleged fraud is the ground on which the power is urged. So would it be in those cases, and the fraud would be precisely the same in each."

In *Peck* v. *Weddell*, 17 Ohio St., 271, it was held that fraud in election could not justify injunction. In *Thompson* v. *Ewing*, 1 Brewst. 67, it is held, that equity can not restrain a prothonotary from certifying election-returns to the board of return judges, though the returns are admitted to be forgeries. 6 Amer. & Eng. Cylop. Law, tit. "Elections," p. 390, states the law thus: "A court of equity will not interfere by an injunction to prevent the election officers or canvassing officers from doing their duty as required by the law, nor prevent them from canvassing votes in a certain way."

I think the case of *Fleming* v. *Guthrie, supra* p. —(9 S. E. Rep. 23) contains principles of law kindred to if not binding as authority in this case. Judge Fleming, who was a candidate for governor at the same election, obtained an injunction restraining the secretary of state from laying before the legislature the certificate of the commissioners of the County Court of Kanawha county of the result of the election as

to governor, and afterwards Gen. Goff, who was also a candidate for governor, obtained from the Circuit Court of Kanawha a *mandamus* to compel the secretary of state to do what he had been so enjoined from doing. The Circuit Court announced, that it would disregared and ignore such injunction. The bill of injunction alleged that Fleming had before that obtained from said circuit court a *certiorari* to correct the action of the commissioners in canvassing the vote for governor, and that said *certiorari* was yet pending, but that said commissioners had transmitted said certificate of returns to secretary of state before said *certiorari* issued. Fleming asked a writ of prohibition from this Court to prohibit the circuit court from ignoring said injunction and proceeding with said *mandamus*, which was refused by this Court.

Here was an injunction to restrain the sending to the legislature, that it might declare the result as to governor, the returns of Kanawha county, until the pending writ of *certiorari* should accomplish correction of alleged errors and procure correct returns. That injunction might be said to be merely auxiliary and necessary to keep back the returns, so that they could not be made the basis of a declaration of election, until correct returns should be had, just as much as in this case; but the court did not think the injunction could be sustained for want of jurisdiction. In delivering the opinion of the court, SNYDER, president of the court, said:

"In *Walton* v. *Develing*, 61 Ill. 201, it was held that 'where the law plainly requires an officer to perform a duty, and he is not exceeding or abusing his powers, but fairly acting within the same, and a court issues a writ to restrain him from its performance, he must discharge his duty as prescribed by the law.' That case was a proceeding for contempt against election officers for holding an election in obedience to an order of injunction, and in which the court held that the injunction, having been issued without authority, was void, and that there was no contempt in disobeying it. The court, in its opinion, says: 'In such case what must control the officer,—the mandate of the county or the plain behests of the law.? The court, as well as the inferior officer, must be governed by the law. When the law imposes a positive duty upon a public functionary, and a court commands him not to

perform it, he must obey the law, and disobey the writ of the court.' In *Moulton* v. *Reid*, 54 Ala. 320, it was decided that a court of equity has no jurisdiction to enjoin the person declared elected to a municipal office from using his certificate of election where the law provides for a contest."

This Court then held : "A court of equity has no jurisdiction to enjoin the Secretary of State from delivering to the speaker of the house of delegates the sealed returns of an election for governor properly transmitted to him, and such injunction, if granted, will be treated as a nullity." And citing in its opinion with approbation the case of *Smith* v. *Myers*, 109 Ind. 1 (9 N. E. Rep. 692) quoted from it as follows : "It is a principle of constitutional law, declared in our constitution, and enforced by many decisions of our own and other courts, that the departments of government are separate and distinct, and that the officers of one department shall not invade any other. To interfere by injunction in this case would involve a violation of this fundamental principle, as a conflict between two great departments of the government would result from an exercise of the jurisdiction invoked by the appellant."

Why do not these principles substantially apply to the case in hand ? The injunction here involved was an act of the judicial department tending in its consequences to prevent the governor, the chief of the executive department, from performing an important function assigned to him by law,—that of declaring an election of a member of Congress. Through these commissioners the popular will in elections for all offices, national and state, from president and governor down as expressed in the several counties, is ascertained and certified to the power, which declares the election-result. For representative in Congress the vote is certified by them to the highest State officer, the Governor, in order that he may ascertain and declare the result. This duty is of the most vital importance and should be performed without delay.

Is it possible, that injunction lies to tie up even temporarily the performance of these functions so necessary to reach the popular verdict, when any candidate may think himself aggrieved, and make it dependent on private litigation ? Do not the evils of the exercise of such a jurisdiction at once suggest themselves without specification ? Once the

courts allow it, where will it end? How often and where will it be exercised? It may be rather asked, when and where will it not be exercised? It would prove a Pandora's box, the evils and ultimate effects of which can not be readily foreseen. Through the exercise of such a power in the courts by injunction that which is most sacred in free government—the will of the voters—may be indefinitely delayed in its expression or practically defeated. These matters are in their nature political, and their decision rests with the political power of the government, and the processes, which it has designated for the purpose, not with the judiciary; and the courts should be on their guard lest they overstep the legitimate boundary of their jurisdiction.

This Court has, under the clause of the constitution giving Circuit Courts power to supervise and control all proceedings before justices and other inferior tribunals by *mandamus*, prohibition, and *certiorari*, sustained a jurisdiction by those processes and in so doing has gone as far, as there is warrant, and does not desire to extend the scope of the process of injunction into this field. There is no provision in the constitution expressly authorizing it as to injunction.

But it is argued, that this case is an exception to the general rule, and that the injunction in this instance is only auxiliary or ancillary to the proceeding at law by *certiorari*; that but for it the commissioners could and would certify the returns to the governor before the plaintiff could obtain that writ and give bond to consummate it, and thus render the *certiorari* abortive. I do not see, that the mere fact, that a party has taken exceptions in a law proceeding with intention to appeal to a higher court will warrant an injunction to restrain the judgment. Here the exception was not yet settled or signed; no *certiorari* was pending. Perhaps the intention to obtain it might not be carried out, or the writ might not be obtained. But the position, that there was no other remedy does not seem sound. If upon the *certiorari* when obtained the action of the commissioners should be reversed, the judgment might be such as to need no further proceedings before them; or, if such further proceedings should be necessary, they could be required to review their work and properly certify the result of the election, as

this Court has at this term decided in *Alderson* v. *Commissioners, supra*, p. —; and beyond this the law affords ample and adequate remedy in the process of a contested election. Equity disavows jurisdiction by the stringent process of injunction, where other adequate remedy exists. High, Inj. § 28. Equity especially disavows a jurisdiction in matters pertaining to elections. We fail to see in the circumstances of this case, that stress of necessity, which would make this case an exception to a general rule, which the able and distinguished counsel for the plaintiff frankly admits to exist.

If it be argued, that the contemplated hasty action by the commissioners was with fraudulent intent to defeat the purpose of the *certiorari*, the answer is, first, that the law does not impute fraud to public functionaries in the exercise of their lawful jurisdiction, (*Bridge Co.* v. *Town of Point Pleasant, supra* p.—(9 S. E. Rep. 231) and further that we do not see how fraud could be imputed to them in doing an act, which the law made it their duty to do.

As to the error alleged in discharging the rule for contempt: Does this appeal bring up the judgment in this proceeding to this court for review? The proceeding for a contempt is a criminal proceeding in its nature, separate and distinct, upon the return of the rule or appearance thereto by the defendant, from the cause, in a violation of orders in which the contempt consists. *Railroad Co.* v. *Wheeling*, 13 Gratt. 40; *State* v. *Irwin*, 30 W. Va. 404, (4 S. E. Rep, 413); *Mason* v. *Bridge Co.* 16 W. Va. 864. It is to be then entitled in the name of the state at the relation of the party complaining against the offender. It was so entitled in this case. It must be entered in the law order-book, though the contempt was in disobedience of process or orders in chancery, and it is error to fail to enter it in the law order-book. *Ruhl* v. *Ruhl*, 24 W. Va. 279. It does not appear in what book the order of discharge was entered in this instance. The petition in this case asked an appeal from and *supersedeas* to the two orders in it specified, made 9th January, 1889; one being the order discharging the rule, the other dissolving the injunction and dismissing the bill.

What are we to call this proceeding, or what are we to consider it? It can not be both an appeal and writ of error.

I think it is, what the record calls it, an appeal in said chancery cause, and that, so far as it applies to the order discharging the rule for contempt, it was improvidently allowed, and that it does not bring up for review the order discharging said rule, because that is separate and distinct from the chancery proceeding, criminal in its nature, and can not be brought here by appeal, but only by writ of error. As that order is not therefore reviewable or cognizable in this appeal, we do not consider any question involved in it, whether the said Alderson has such relation to it as to warrant proceedings in his individual name for its review, or whether any contempt was committed.

The decree of the Circuit Court dissolving the injunction and dismissing the bill is affirmed, with costs and $30.00 damages to appellees.

AFFIRMED.