WAPLES et al. v. GILMORE. (No. 8650.)*

(Court of Civil Appeals of Texas. Ft. Worth. Oct. 14. 1916. Dissenting Opinion, Oct. 16, 1916. Rehearing Denied Oct. 17, 1916.)

1. CONSTITUTIONAL LAW ☞68(1)—DISTRIBUTION OF POWERS—POWERS OF COURT—POLITICAL QUESTIONS.

If nominations after primaries to fill vacancy caused by office incumbent's death were expressly forbidden to be made by the executive committee of a party, the court could declare the effect of the law, and the mere fact that the action of the committee, or of the court, might have a political effect would not make the legal question involved political instead of judicial.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 125; Dec. Dig. ☞68(1).]

2. ELECTIONS ☞147 — NOMINATION — HOW MADE—POWERS OF EXECUTIVE COMMITTEE.

Where after a primary the incumbent of an office died, causing a vacancy for which no nomination had been made, Rev. St. 1911, arts. 3172, 3173, as to powers of party executive committee to fill vacant nominations caused by declination or death of nominee, do not apply, such sections applying only when after primary nomination the nominee dies or declines the nomination, so that the committee could nominate as it chose in accordance with party rules.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 122; Dec. Dig. ☞147.]

3. CONSTITUTIONAL LAW ☞68(1)—DISTRIBUTION OF POWERS—POLITICAL QUESTIONS.

The mere fact that one party so predominates as to assure its nominee of election is no ground for interference by the courts with the nominating machinery of such party, where the question is unprovided for in law and wholly political.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 125; Dec. Dig. ☞68(1).]

Dunklin and Buck, JJ., dissenting.

Appeal from District Court, Tarrant County; J. W. Swayne, Judge.

Suit by C. E. Gilmore against Paul Waples and others for an injunction. From an order granting the writ, defendants appeal. Order set aside and injunction vacated.

D. W. Odell, Capps, Cantey, Hanger & Short, and D. B. Trammell, all of Ft. Worth, for appellants. Wynne & Wynne, of Wills Point, and Lattimore, Bouldin & Lattimore, of Ft. Worth, for appellee.

CONNER, C. J. This proceeding was instituted by C. E. Gilmore against Paul Waples, as chairman of the state Democratic executive committee, and against 32 others as members of said executive committee, to restrain the said committee from making and declaring a nomination for state railroad commissioner to fill the vacancy caused by the recent death of the Hon. W. D. Williams.

Upon the filing of the petition before the judge of the Seventeenth judicial district, the prayer of the petition was granted, and pursuant thereto a writ of injunction was issued, and from the order so granting said writ, an appeal was duly prosecuted and the cause submitted to this court on the 10th inst. The petition upon which the order was granted, omitting formal parts and the paragraphs giving the names and residences of the parties, and setting forth the prayer for the writ, is as follows:

"Plaintiff is a citizen of the state of Texas and resides in Van Zandt county in said state. The names of the defendants are mentioned in the above paragraph of this petition, and hereafter when they are adverted to in this petition for the sake of brevity will be called the executive committee of the Democratic party. Their places of residence are scattered over the state of Texas, and are designated in the foregoing paragraph, and will not be further referred to.

"(2) For cause of action plaintiff charges that he is a Democrat and belongs to the Democratic party, and has always affiliated with it in all of its organizations; that W. D. Williams, who was one of the railroad commissioners of the state of Texas, died, and that his death occurred since the primaries at which the Democratic party selected for its various nominees for the various offices for the state of Texas, and said Williams was not the nominee of said party for said office; that the death of said deceased member of the railroad commission occurred after all meetings of the Democratic party in convention assembled; and that the vacancy, occurring by reason of the death of the said W. D. Williams, has not been filled by nomination of any person by the Democratic party as a candidate to fill the said place, but your petitioner is informed and believes and so charges that the executive committee of the Democratic party of the state of Texas is to meet on the 5th day of October, 1916, in the city of Ft. Worth in the county of Tarrant for the purpose, among other things, of unlawfully and illegally attempting to declare a nominee of the Democratic party for the state of Texas to be placed on the ticket to fill the vacancy on the railroad commission caused by the death of the said W. D. Williams, and of certifying such nomination to the secretary of state of the state of Texas; that there have been two candidates that have announced for the office to fill said vacancy, your petitioner and Charles H. Hurdleston, as has been published by the various papers throughout the state of Texas, and applicant is informed that others may announce, and your petitioner charges that the executive committee of the Democratic party has no power or authority under the laws of the state of Texas, nor has there been given to said executive committee or delegated to them by any lawful authority, the authority to make or declare said nomination or certification. Your petitioner is informed and believes, and so charges, that said executive committee has been called together by the political machinery of this state that now has charge of, and is attempting to dominate, the politics of this state, with the avowed intention and declared purpose of declaring Charles H. Hurdleston, who is the appointee of Governor Ferguson to fill the vacancy caused by the death of the said W. D. Williams until the next general election, which is in November, to be the nominee of the Democratic party for said office and of so certifying to said secretary of state; that said action that is being and threatened to be taken by said executive committee is unlawful and unjust; that your petitioner is a candidate for said office, and announced before he learned of the course that was going to be attempted to be pursued by the executive committee of the Dem-

ocratic party of the state of Texas; and your petitioner is informed and believes, and so charges, that Governor Ferguson, the Governor of Texas, has notified members of the executive committee of the Democratic party of the state of Texas that they will be called together on the 5th day of this month at Ft. Worth, Texas, for the purpose of selecting a candidate to succeed W. D. Williams, deceased. As an earnest of this, your petitioner charges, upon information and belief, that Walter Jones, one of the executive committeemen of the Seventh senatorial district, and James Stubbs of the Seventeenth senatorial district, have each received notice of said meeting from Governor Ferguson. There is absolutely no provision by statute, nor no provision made by any action of the Democratic party acting by and through its conventions and organizations authorized to act, to name or declare a nominee for said party created under this emergency, and your petitioner respectfully shows to the court that the only power and authority that said committee could have, if it takes action at all, is to determine the manner and way a candidate shall be selected by the Democratic party of the state of Texas to be placed on the ticket as its nominee. The great Democratic party of the state of Texas has the power, the right, and the vested right to be heard in the selection of its candidate, and it has a right to speak either by primary or by convention through its people in the selection of its candidate, and no power, nor authority, nor right, is vested in the executive committee of the Democratic party to declare any one the nominee of the party.

"(3) Your petitioner charges that the action of the executive committee of the Democratic party, and if the name of any person as such nominee be so certified to him, of the secretary of state in attempting to declare the nominee of the Democratic party for such office and to place his name upon the Democratic ticket of the state of Texas, if same be not prevented, will be equivalent to an election. Your petitioner is a candidate and has the full right under the Constitution and laws of this state to make the race before the Democratic party of the great people of the state of Texas for this office, and if the executive committee and the defendants in this case are permitted to meet and in star chamber to declare and speak for the Democratic party of the state of Texas, that he will be deprived of a valuable right and of the privilege, conceded to every citizen of the United States and the state of Texas, to ask the people of his party to determine either by ballot or by convention his right to have his name placed upon the ticket to fill the office to which he aspires, and if the executive committee is permitted to act, and permitted to unlawfully and illegally declare a nominee, or in other words to declare the appointee of Governor Ferguson, or any other person, the nominee of the Democratic party, and to so certify to the secretary of state, it will be directly taking away from the people and from the people that constitute the Democratic party in the state of Texas, the right to speak, and place it in the hands of the political machinery of the state, and your petitioner will thereby suffer irreparable injury."

Title 49 of the Revised Statutes of Texas of 1911 provides for elections, both general and primary, by the people of the state to determine the choice of electors for the several offices, executive, legislative, and judicial, required by the form and purposes of our state government. In chapter 5, relating to general elections, an official "ballot" is provided for. It is declared that such ballot shall contain the printed names of all candidates whose nominations for an elective

office have been duly made and properly certified. And article 2966 declares that:

"No name shall appear on the official ballot except that of a candidate who was actually nominated (either as a party nominee or as a non-partisan or independent candidate) in accordance with the provisions of this title."

It is further provided in the chapter named, article 2968, that:

"Where a nominee shall have declined his nomination, or shall have died, and the vacancy so created shall have been filled, and such facts shall have been certified in accordance with the provisions of article 3172, thereupon the secretary of state or county judge, as the case may be, shall promptly notify the official board created by this act to furnish election supplies that such vacancy has occurred, and the name of the new nominee shall then be printed upon the official ballot, if the ballots are not already printed. If such declination or death of the nominee occurs after the ballots are printed, or due notice of the name of the new nominee is received after such printing, the official board charged with the duty of furnishing election supplies shall prepare as many pasters bearing the name of the new nominee as there are official ballots, which shall be pasted over the name of the former nominee on the official ballot before the presiding judge of the precinct endorses his name on the ballot for identification."

In view of these provisions, and of others perhaps not now necessary to particularly notice, the complainant below, and appellee here, C. E. Gilmore, seeks to support the order appealed from upon articles 3172, 3173, c. 10, tit. 49. These articles read as follows:

Article 3172: "A nominee may decline and annul his nomination by delivering to the officer with whom the certificate of his nomination is filed, ten days before the election, if it be for a city office, and twenty days in other cases, a declaration in writing, signed by him before some officer authorized to take acknowledgments. Upon such declination (or in case of death of a nominee), the executive committee of a party, or a majority of them for the state, district or county, as the office to be nominated may require, may nominate a candidate to supply the vacancy by filing with the secretary of state in the case of state or district officers, or with the county judge in the case of county or precinct officers, a certificate duly signed and acknowledged by them, setting forth the cause of the vacancy, the name of the new nominee, the office for which he was nominated, and when and how he was nominated."

Article 3173: "No executive committee shall ever have any power of nomination, except where a nominee has died or declined the nomination as provided in article 3172."

Appellants urgently insist that, notwithstanding the provisions of the statutes noted, injunctive relief should not have been granted, for the reason that the right, privilege, or complaint of the petitioner, Gilmore, is political rather than juridical. If, however, it be true, as appellee insists, that article 3173, above quoted, properly applies to the case made by the plaintiff's petition, then the majority, composed of the writer and of Associate Justice BUCK, are not inclined to agree with appellant's contention. Section 3, art. 1, our state Constitution, provides that all freemen have equal rights, and that no man is "entitled to exclusive separate emoluments or privileges, but in considera-

tion of public service." And section 19 of the same article provides that no citizen shall be deprived of "life, liberty, property, privileges or immunities, or in any manner disfranchised except by [the] due course of the law of the land." In view of which and of Revised Statutes, art. 4643, expressly clothing the district courts with power to issue injunctions, "where it shall appear that the party applying for such writ is entitled to the relief demanded, and such relief or any part thereof requires the restraint of some act prejudicial to the applicant," we feel unable to agree to the contention mentioned.

[1] The petition presents the case of a citizen entitled to align himself with the Democratic party and to vote and to seek the favor of the electors in obtaining an office. These, as it seems to said majority, are rights or privileges having their basis in the fundamental law of the land, and that the right of our people to the free and untrammelled exercise of their constitutional privileges is to be guarded with sleepless vigilance by all who appreciate the blessings of free institutions. Such rights and privileges seem equal in importance to freemen to rights of liberty and property, in protection of which courts constantly exercise their functions. Assuming the application of the statutes relied upon by appellee, no sound reason appears to said majority why the general language of article 4643, hereinbefore quoted in part, should not apply and be available. Under the averments of the petition, which must be accepted as true in our determination, the threatened act would be such impairment of the plaintiff's privileges as to amount to an entire destruction of them, and this under the circumstances was admitted on the submission. If in fact the threatened act of the executive committee be expressly forbidden, as appellee insists, then as the majority named view it, the question becomes legal in part at least. In such case it would properly be a function of the court to declare the effect of the law, and the mere fact that the action of the committee, or the action of this court, might have a political effect does not make the legal question involved political instead of judicial. See State of Wisconsin v. Cunningham, 83 Wis. 90, 53 N. W. 35, 17 L. R. A. 145, 35 Am. St. Rep. 27; Walls v. Brundidge, 109 Ark. 250, 160 S. W. 230, Ann. Cas. 1915C, 980; In re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402; Anthony v. Burrow (C. C.) 129 Fed. 783; 3 Bouvier's Law Dictionary, p. 2961; McDonald v. Lyon, 43 Tex. Civ. App. 484, 95 S. W. 67; Robinson v. Wingate, 36 Tex. Civ. App. 65, 80 S. W. 1068; Harding v. Commissioners' Court, 95 Tex. 175, 66 S. W. 44; City of Dallas v. Consolidated Street Ry. Co., 105 Tex. 337, 148 S. W. 292; Fletcher v. Tuttle, 151 Ill. 41, 37 N. E. 683, 25 L. R. A. 143, 42 Am. St. Rep. 220; Winnett v. Adams, 71 Neb. 817, 99 N. W. 681; Alderson v. Com-

missioners, 32 W. Va. 640, 9 S. E. 868, 5 L. R. A. 334, 25 Am. St. Rep. 840; State v. Foster, 111 La. 939, 36 South. 32; Kearns, v. Howley. 188 Pa. 116, 41 Atl. 273, 42 L. R. A. 235, 68 Am. St. Rep. 852; 15 Cyc. 331.

[2] We need not, however, elaborate the views above expressed inasmuch as the majority, composed of the writer and Associate Justice DUNKLIN, are of the opinion that articles 3172 and 3173 have no proper application to the facts set forth in the plaintiff's petition, and that, therefore, as will more fully hereinafter appear, the question presented to us is political rather than judicial, and that, hence, the plaintiff was not entitled to the relief sought and awarded him by the court's order below. It seems evident from the petition that the right or privilege of the plaintiff, in the absence of an applying statute, is wholly political. If the threatened act be consummated, he may yet continue to be a candidate and seek the office to which he aspires. It is not alleged in the petition that the threatened act necessitates the loss or destruction of anything of determinable pecuniary value, and it is merely speculative to say that an unimpeded, untrammelled candidacy, such as he seeks, would result in his election. So that, as stated, in the absence of an applying statute, the question presented is undoubtedly political. Do, however, the statutes invoked apply? In 1905 (Laws Tex. vol. 12, p. 520 et seq.) our Legislature passed an act covering the entire field of elections, prescribing the qualifications of voters, provided that votes should be by ballot, providing for the divisions of counties and cities into voting precincts, the proper notices and returns of election, election supplies and returns, defining the powers and duties of the officers of election, and prescribing the method of conducting elections, etc. Said act, from section 1 to section 101, has relation to general elections; the act further, however, provides under a different heading for primary elections, and from section 102 to section 193, inclusive, relates to such primary elections. As codified, the law is found in title 49 of Revised Statutes of 1911. In both the act of 1905 and in the codification, the two subjects, to wit, the subject of general elections and of primary elections, are kept almost wholly separate. Chapters 1 to 9, inclusive, of the title relate to general elections, the concluding chapter on this subject consisting of "Miscellaneous Provisions." In the chapters relating to the general election we note but one reference to provisions found among the articles relating to primary elections, and that is in article 2968, c. 5, which we have already quoted, which provides that, where a nominee shall have declined the nomination or shall have died, the vacancy so created shall be filled in accordance with article 3172, also quoted, and which authorizes an executive committee to make a nom-

ination to fill the vacancy. Chapter 10 of the codification relates almost if not entirely to the subject of primary elections. The necessary qualifications of voters and of officers, the character of ballot, the method of conducting the election, of canvassing the result, of making the returns, etc., are all prescribed distinctly and independently of like provisions relating to general elections. And it is in this chapter of the codification, as likewise in the act of 1905, under the heading of "Miscellaneous Provisions," that we find article 3173 already quoted, and upon which appellee relies, prohibiting an executive committee from making a nomination except where a nominee has died or declined the nomination, as provided in the preceding article 3172. It seems quite plain to the majority last stated that the "nominee" in the mind of the Legislature at the time of the enactment of articles 3172 and 3173, was the nominee of a primary; for among other things, as will be seen by a re-reference to article 2968 already quoted, that in the contingency of the declination or death of a nominee, after the official ballots have been printed, that then pasters shall be provided bearing the name of the new nominee, which "shall be pasted over the name of the former nominee on the official ballot." In the case of W. D. Williams this direction could not be followed. He was in no sense a nominee. His name, under any reasonable construction of the statutes, could not lawfully be placed upon the official ballots in the coming election. He was not a candidate before the primary. Did time admit, we might, we think, cite numerous instances where it had been held that terms of general import in statutes were restricted by the connection in which they had been used. It is said in 36 Cyc. p. 1119, par. (II), that:

"By the rule of construction known as 'ejusdem generis' where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated."

And in Bear Bros. & Hirsch v. Marx & Kempner, 63 Tex. 301, it was said by our Supreme Court that:

"In construing a statute, it is often proper, and even necessary, that the meaning of words may be ascertained by reference to the meaning of words associated with them. This rule is thus stated by an elementary writer: 'In the construction of statutes, likewise, the rule "noscitur a sociis" is very frequently applied; the meaning of a word, and consequently the intention of the Legislature, being ascertained by reference to the context, and by considering whether the word in question and the surrounding words are, in fact, ejusdem generis, and referable to the same subject-matter.'"

Article 3173 must, therefore, be read in the light of its connecting articles and of the subject under consideration of the lawmakers at the time, and, as already indicated, in the mind of the majority last-named, the Legislature in the enactment of article 3173 did not have in contemplation the contingen-

cy that has been presented by the death of the Hon. W. D. Williams. If this be true, as already stated, then the question of whether the Democratic executive committee of Texas shall undertake to make a nomination and certify such nomination to the secretary of state is wholly political, the right and wrong of which is dependent upon rules and regulations prescribed by the Democratic party, or of its controlling authorities, and not upon any law to the execution of which the courts are committed. As was said by the Court of Appeals of Kentucky in Davis v. Hambrick, 109 Ky. 276, 58 S. W. 779:

"Political parties are voluntary associations for political purposes. They are governed by their own usages, and establish their own rules. Members of such parties may form them, reorganize them, and dissolve them at their will. The voters constituting such party are, indeed, the only body who can finally determine between contending factions or contending organizations. The question is one essentially political, and not judicial, in its character. It would be alike dangerous to the freedom and liberty of the voters, and to the dignity and respect which should be entertained for judicial tribunals, for the courts to undertake in any case to investigate either the government, usages, rules, or doctrines of a political party, or to determine between conflicting claimants' rights growing out of its government."

See, also, State ex rel. R. C. Jennett v. Owens, 63 Tex. 261.

Nor is it alleged in the plaintiff's petition that by any rule of the Democratic party, of which he is a member, that the state executive committee is precluded under the circumstances shown in this case from making a nomination. So far as we can be advised by the record the threatened procedure is in accord with party regulations.

[3] It is alleged and insisted that this state is predominately Democratic, that a nomination is equivalent to an election; but what if it were otherwise? Let us suppose that the voting strength of the Democratic party and the Republican party, or of the Socialist party, was very nearly equal, so nearly so that two or more candidates of the Democratic party for any given office would almost so certainly divide the strength of the party as to make certain the election of the nominee of the Republicans or of the Socialists. Then should it be said from the viewpoint of the party man that a Democratic Legislature, in the enactment of article 3173, intended to preclude its chief executive and supervisory body, selected under the provisions of our election law by the voters of the various districts of Texas, from safeguarding the party interests by making a nomination when a vacancy in a state office had been created by death too late, as here, to name or nominate another by primary convention before the date of the general election, at which, under the general election laws, the officer must be selected? We think not. It can make no difference in principle that the state is largely Democratic instead of Republican or Socialist. The prin-

ciple is the same, and if under the circumstances the plaintiff in this proceeding can lawfully invoke the aid of the court to prevent a party nomination, we see no reason why a Republican or a Socialist might not do the same. It would certainly be to the political advantage of either of said parties, if the state was politically closely divided, to prevent concerted action on the part of its political adversary, and, as stated, we think it could make no difference in principle whether or not it is so divided. With the success or failure of the different parties, or of the various candidates, the courts have nothing to do, other than as the written law may require of them. And where, as here, the question is unprovided for in the law and is wholly political, as we think it is, the authorities are almost, if not entirely, uniform that the courts will take no cognizance of such controversies. City of Dallas v. Consolidated Street Ry. Co., 105 Tex. 337, 148 S. W. 292; Townsen v. Merfelder, 49 Tex. Civ. App. 289, 109 S. W. 420; Robinson & Watson v. Wingate, 98 Tex. 267, 83 S. W. 182; Id., 36 Tex. Civ. App. 65, 80 S. W. 1067; Watson v. Cochran, 171 S. W. 1068; Annapolis v. Gadd, 97 Md. 734, 57 Atl. 941; State v. Foster, 111 La. 939, 36 South. 32; Alderson v. Commissioners, 32 W. Va. 640, 9 S. E. 868, 5 L. R. A. 334, 25 Am. St. Rep. 840.

We might profitably add much, perhaps, to what we have said, but the exigencies of the case and the insistence of the parties have been such that we feel somewhat hurried, and therefore will conclude our hastily expressed views by saying that in our judgment, until such time as our Legislature shall provide for a contingency such as is involved in this action, the properly constituted political authorities concerned are supreme. We therefore are of opinion that the trial court erred in granting the prayer of plaintiff's petition, and in ordering the issuance of an injunction. It is, accordingly, adjudged that said order be set aside, and the injunction issued in pursuance thereof be vacated.

BUCK, J., dissents in part and reserves the privilege of indicating his views in writing.

DUNKLIN, J. (dissenting). My reasons for dissent from the conclusions of the majority upon the issue first discussed in the opinion are as follows:

The controlling question is one of jurisdiction to grant the relief prayed for by appellee Gilmore.

All political rights are derived from the Constitution or Statutes, or from both those sources. If, by article 3173 of our Statutes, the Legislature intended to deny to the state executive committee of a political party the authority to nominate a candidate for office under circumstances alleged in the present suit, and if the purpose of that Statute was to permit any and all candidates to make the

race for such an office, untrammeled by such a nomination, yet the statutory rights thus given to appellee, and other candidates in the same situation, are none the less political by reason of the fact that they are conferred by Statutes.

The power vested in judges of district and county courts by article 4643 to grant writs of injunction relate only to suits within the jurisdiction of said courts, and the general jurisdiction of the district court is prescribed in chapter 3, tit. 24, of the Statutes. Those jurisdictional statutes refer alone to civil suits. In the absence of some special provision of the Statutes to the contrary, the character of such suits is determined by the common law, which is adopted by Statutes of this state, and it is well settled by the common law that civil demands do not include demands for the enforcement of political rights. City of Dallas v. Consolidated St. Ry. Co., 105 Tex. 337, 148 S. W. 292; Harding v. Commissioners' Court, 95 Tex. 175, 66 S. W. 44; McDonald v. Lyon, 43 Tex. Civ. App. 484, 95 S. W. 67; Walls v. Brundidge, 109 Ark. 250, 160 S. W. 230, Ann. Cas. 1915C, 980.

Hence the writer is of the opinion that even though article 3173 of the Statute be given the interpretation invoked by appellee, the district court in which this suit was instituted had no jurisdiction of it, and that the judge thereof had no authority to grant the writ of injunction.

BUCK, J. (dissenting). As stated in the majority opinion, the writer agrees with the views expressed by Chief Justice CONNER that if articles 3172 and 3173, Vernon's Sayles' Texas Civil Statutes, 1914, apply to the case presented by plaintiff's petition, then article 4643, Id., provides for injunctive relief for appellee. Chapter 11, § 50, Acts of the 29th Legislature, pp. 520–565, provides that: "A nominee may decline and annul his nomination," by following the course therein prescribed. This section further likewise provides that in the case of the death of a nominee, the executive committee of the party of which the deceased was the nominee may nominate a candidate, and have his name placed on the ticket as the nominee of said party, in lieu of the name of the person so deceased. Certainly this provision, preserved in part in article 3172, supra, has reference not merely to general elections, as contradistinguished from primary elections, but also to the substitution of a nomination by the executive committee in place of a nomination by primary election, where the death of the nominee has occurred subsequent to such primary election, and therefore deals with and has reference to the system of primary nominations subsequently provided for in this act.

As a part of said section 50 of this act, and preserved in article 2968 of the Civil Statutes, it is provided that: "No paster shall be used except as herein authorized, and, if otherwise used, the names pasted shall not be counted." Thus evidently intending to prohibit the counting of the votes cast for a candidate in the general election who has not been nominated by one of the methods provided for, and whose name has been pasted on the ticket. Section 118 of the same act, now preserved in article 3173 of the Statutes, provides:

"No executive committee *shall ever* (italics the writer's) have any power of nomination except where a nominee has died or declined the nomination as provided in section 50 of this act."

It would seem more specific, plainer language could hardly be used to inhibit an executive committee from nominating a candidate except in the case where a nominee has died or declined the nomination.

It is conceded by my Brethren that W. D. Williams was not, at the time of his deplored death, a nominee of the Democratic party in the sense the word is used in this act. Therefore, no such exigency arose as authorized a nomination by the executive committee provided for in section 50 of said act. It is further conceded by Chief Justice Conner that inasmuch as the Legislature has seen fit to enact legislation covering party nominations, and has therein prescribed how such nominations shall be made, and has prohibited their being made except as provided, that injunction may be resorted to to prevent the doing of some act prejudicial to the rights of a petitioner, which act the law has absolutely forbidden. In this view he is fully sustained by the authorities he cites, as well as others of equally eminent respectability. It would, in the opinion of the writer, make no difference if it were in fact (as suggested in the majority opinion) a rule of the Democratic party that the executive committee should nominate a candidate under any other conditions than the two mentioned in the statute. The rules of every party must be circumscribed and limited by the law as enacted by the Legislature. Certainly, then, it was not incumbent upon the petitioner in this case to contravene in his petition the existence of such inhibited rule. If, under the statutes and under the Constitution, plaintiff is entitled to make his canvass for this office without having his opponent receive an advantage at the hands of the executive committee, which advantage is not only not provided for by statute, but absolutely prohibited by the enactment of the Legislature, then it seems to the writer that the injunction would lie, and that the judgment of the trial court should in all things be affirmed.

As is well said by the appellee:

"The rights of a candidate in elections, where the procedure is prescribed by law, are legal rights and the question in the instant case goes beyond the mere right to be a candidate and involves the right to be denominated on the official ballot as one who is the legal nominee of the Democratic party."

It was said in the case of Fletcher v. Tuttle, 151 Ill. 57, 37 N. E. 688, 25 L. R. A. 145, 42 Am. St. Rep. 220, cited and relied on by appellants:

"If a public officer, charged with the political administration, has disobeyed or threatens to disobey the mandate of the law, whether in respect to calling or conducting an election or otherwise, the party injured or threatened with injury in his political rights is not without remedy; but his remedy must be sought in a court of law, and not in a court of chancery."

Under the blended system of this state, no such distinction between legal and equitable remedies is observed as in the Illinois jurisdiction. Under article 4643, Vernon's Sayles' Texas Civil Statutes, injunctions may be granted:

"(1) Where it shall appear that the party applying for such writ is entitled to the relief demanded, and such relief or any part thereof requires the restraint of some act prejudicial to the applicant."

As said in the case of Lane v. Kempner, 184 S. W. 1090–1093:

"These provisions of the statute have been construed in many cases by the courts of this state as giving an applicant, putting himself within their terms, a right to the injunctive relief, irrespective of the existence of a legal remedy at law. It is not a sufficient answer to say that the applicant had a remedy at law, and that he should first be forced to resort to such legal remedy."

See, also, Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994; Tipton v. Railway Postal Clerks Association et al., 173 S. W. 562; and other cases cited in Lane v. Kempner.

The cases of City of Dallas v. Consolidated Street Ry. Co., 105 Tex. 337, 148 S. W. 292, Harding v. Commissioners' Court, 95 Tex. 175, 66 S. W. 44, McDonald v. Lyon, 43 Tex. Civ. App. 484, 95 S. W. 67, Walls v. Brundidge, 109 Ark. 250, 160 S. W. 230, Ann. Cas. 1915C, 980, cited by Associate Justice DUNKLIN in his dissent, do not, in the opinion of the writer, give support to the contention that one who is doing, or threatening to do, an illegal act to the prejudice and injury of a citizen of this state, may not be enjoined, because, forsooth, such act, actual or threatened, is connected with, or pertains to, the machinery of a political party. In the first cited case the Supreme Court merely held that courts have no power to interfere by injunction with canvassing returns and declaring results of an election on the ground that the regulation sought to be adopted by popular vote was not one which could be enacted, and would, if adopted, interfere with property rights of the complaining party. In this cited case those sought to be enjoined were alleged in plaintiff's petition to be threatening to pursue the course prescribed by statute, and Mr. Justice Phillips in discussing the question said:

"Elections belong to the political branch of the government, and the general rule is that they are beyond the control of the judicial power. The authority resides in the courts to determine their validity, and in cases of invalidity to protect property rights which may be wrongfully impaired if their result is suffered to become effective and is sought to be enforced; but a proper deference for their respective powers that is imposed upon the several departments of the government, should constrain the courts to caution and certainty when their authority is invoked against the determination of the popular will."

In City of Austin v. Cemetery Association, 87 Tex. 330, 28 S. W. 528, 47 Am. St. Rep. 114, and Wade v. Nunnelly, 19 Tex. Civ. App. 256, 46 S. W. 668, it was held that an injunction will lie to restrain the enforcement of a void city ordinance, where it is shown that the enforcement of the ordinance would result in irreparable injury to the applicant.

The writer believes the same principle as here contended for by appellee is enunciated in the case of Board of Medical Examiners of Texas v. Taylor, 56 Tex. Civ. App. 291, 120 S. W. 574, where the Texarkana court held that where a State Board of Medical Examiners places such a construction on the law as to deprive a citizen of unquestionable legal right, under circumstances that a citizen has no right to appeal and no other remedy, a court having jurisdiction to issue mandamus may review such determination on such writ. In City of San Antonio v. Routledge, 46 Tex. Civ. App. 196, 102 S. W. 756, it is held that mandamus will lie to compel the performance of an act which the law enjoins as a duty resulting from an office, trust, or situation. With equal force it seems that an officer, person, or official body, threatening to do an act prohibited by law and prejudicial to the rights of another, should be subject to injunction to restrain the threatened act.

Hereinabove the writer, in the limited time allowed, has sought to express his views, and regrets that the exigencies of the situation do not allow him more time for the investigation of the important questions involved.

