HUDSON J. WINNETT ET AL., APPELLANTS, V. GEORGE A. ADAMS ET AL., APPELLEES.

FILED MAY 5, 1904.   No. 13,386.

1. **Civil and Political Rights.** A civil right is a right accorded to every member of a district, community or nation; a political right is one exercisable in the administration of government.

2. **Primary Election:** EQUITY. A court of equity will not undertake to supervise the acts and management of a political party for the protection of a purely political right.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Affirmed.*

*Hall & Marlay,* for appellants.

*Billingsley & Greene, contra.*

ALBERT, C.

This is a suit for relief by injunction, brought on the 19th day of May, 1902. As the only question in the case is, whether the facts stated in the petition are sufficient

55

to constitute grounds for equitable relief, it will be necessary to examine the petition at some length. Omitting the formal parts, and some matters not necessary to an understanding of the case, the petition is as follows:

"The plaintiffs complain of the defendants and say that the defendant George A. Adams is the chairman of the republican county central committee of Lancaster county, and that the said Walter L. Dawson is secretary of said committee, and the defendants Frank A. Graham, Julius Dietrich, George H. Moore, Stanley Wicks, Howard L. Beatty, William Lawlor, James Stevenson, Charles W. Spears, William A. Green, Andrew G. Billmeyer, John S. Bishop, Dominick G. Courtney, William A. Leese, Edwin R. Mockett, Alva L. Pound, James H. Valentine, Victor Seymour, Lee J. Dunn, William J. Blystone, Charles B. Capron, J. H. Amos and Harry G. Abbott are members of such central committee, representing the several precincts of the several wards in the city of Lincoln in said county; that said republican county central committee consists of 20 members from the city of Lincoln and its various precincts, and that there are 32 members of said central committee from the various country precincts in said county; that the country precincts are represented on said central committee as follows:" (Here follows a list of the members from the country precincts.) There being in all 52 members from both city and country precincts of said county central committee. That it requires a majority of said members to adopt any rules or regulations for the governing of primary elections to be held in said county. That said republican county central committee is the governing authority of the republican party within said county and in said several precincts and wards of said city, within the meaning of chapter 27 of the laws of 1899, being sections 125a to 125l, chapter 26, Compiled Statutes, 1901 (Annotated Statutes, 5800-5811).

"That the plaintiffs herein are republicans and qualified electors of the city of Lincoln, Lancaster county, Ne-

braska, and as such the said Hudson J. Winnett is a
candidate for the nomination of the republican party of
said county of Lancaster for the office of state senator;
and that Orlando W. Webster and William B. Linch are
candidates for the nomination of the republican party of
said county for the house of representatives of the Ne-
braska legislature, and are seeking nomination to said
respective offices at the hands of the republican county
convention of Lancaster county, Nebraska, and intend,
if nominated by said convention, to run for said offices
at the general election to be held on the........day of
November, 1902; and as such candidates for said respect-
ive offices they desire to submit their names to the quali-
fied republican voters of said several precincts and wards
in said city and to submit to the qualified republican
voters of said wards, and each precinct thereof, a list of
delegates to the regular republican county convention of
the republican party, in their respective interests and
favorable to their nominations for said respective offices.

"That the regular county convention of said republican
party in said county, for the purpose of making nomina-
tions to be voted upon at said regular election, is fixed
to be held at the city of Lincoln, aforesaid, on Wednes-
day, the 21st day of May, 1902; and that the regular
primary election of said party within said county is set
for Tuesday, the 20th day of May, 1902, at which election
delegates are to be chosen to take part in said county
convention. That such primary election in said several
precincts of said several wards in the city of Lincoln will
be under the control and supervision of said defendants,
respectively, as chairman, secretary and committeemen,
as aforesaid; that the said George A. Adams as chairman
of said central committee, by and under the rules of
practice governing said primary, is to print the ballot
to be voted upon at such primary election and have full
and complete charge of the preparation and distribution
thereof.

"And the plaintiffs further say that the said defendants

and each of them unlawfully, wrongfully and fraudulently, and for the purpose of preventing these plaintiffs from submitting a list of delegates favorable to them and their interests in each of said precincts, and for the purpose of preventing said qualified republican electors in said several precincts from voting upon a proposed list of delegates favorable to each of said plaintiffs herein for said offices for which they are candidates, are threatening, and are about to put in force and apply a pretended rule or regulation, alleged to have been adopted by said central committee, in words and figures following, to wit:

" 'All ballots shall be printed by the chairman of the county central committee. Nothing shall be placed upon the ballot except the list of delegates selected at the caucus, the names of the candidates, and at the top of the ballot shall be printed "Official Ballot," and between the names of the delegates sufficient space shall be left in which to write a name or names, other than those printed on the ballot, and at the top of such ballot shall be printed a circle, so that, if desired by the voter, the whole list of delegates may be voted for by one mark; those that neglect to make said mark shall not invalidate such ballot, but the vote will be counted for the delegates unscratched. Said list of delegates shall be printed on plain white paper.

" 'Provided, that, in such voting precincts as may have two or more candidates contesting for the delegates to the county convention, said candidates may submit their respective tickets to the primary election for settlement, and not be bound by the caucus rule. Said tickets shall be certified to the secretary of the county central committee by the committeemen of the precincts and printed by the chairman of the county central committee, but said agreement between the candidates shall not operate to prevent holding a caucus, if the committeeman sees fit so to do, and the caucus ticket shall also be printed by the chairman of the county central committee. The tickets presented by the candidates shall be printed the same as

in sec. 4. All of said candidates shall file with the secretary of the county central committee a written statement of their agreement as to the tickets to be used at the primary. And the name of the office for which the candidate is running shall be placed thereon; also the name of the nominees selected by the caucus, whether he resides in that precinct or not.'

"That the said pretended rule is unreasonable, fraudulent and unjust, and beyond the power of said committee to enact, and contrary to the provisions of the statute governing primary elections in this state; and neither under said statute nor by virtue of their general authority did said committee have the power or right to enact and to put in force an unreasonable or unjust rule, designed to prevent the republican voters of said several precincts and wards from expressing their choice, and preventing these plaintiffs and each of them from submitting to such electors a list of delegates in his interests to be voted upon at said primary election. * * *

"The plaintiffs further allege that, while said rules and regulations pretended to have been passed or adopted and promulgated at a meeting of the county central committee, yet, your plaintiffs allege the fact to be that there was in truth and in fact no meeting of the republican county central committee of said county; but the fact is that the city members only of said republican county central committee met together, formulated and pretended to adopt and promulgate said rules and regulations for the government of said primary election; but plaintiffs allege that they did not have a majority present at such meeting of said county central committee, but had in fact only about 20, and that more than 32 members of said county central committee were absent, and knew nothing about, and had nothing whatever to do with said rules and regulations; and that said rules and regulations are void, for the reason that the city members of said committee have no right or authority to formulate, adopt and pass rules and regulations for the government of

said primary election in the absence of the members of said central committee from all of the various country precincts, said members being 32 in number.

"Plaintiffs further say that the caucuses provided for in said rule, and to which the full and complete authority is pretended to be given to dictate what shall be placed upon the ballot to be voted at such primary election, are in no way subject to the restriction as to qualifications of voters provided by law above referred to; and that the aim and object of said pretended rule is to nullify and evade the provisions of said statute as to qualifications of voters, by leaving the real and substantial selection to the caucus instead of to the real primary election; and that at said caucus meetings no rules as to qualifications of voters will be applied, and if said rule is put in full force and effect it will annul and make a mere form and farce the primary election.

"Plaintiffs further allege that, if said defendants are permitted to apply said rule and enforce the same, they will be wholly without remedy; that by and under the pretended rules which said defendants have threatened and are about to enforce, as aforesaid, the said defendants, except the said Dawson and Adams, and each of them, are made the chairman of the several caucuses of the several precincts in which they are committeemen and are given the power to name the secretaries thereof, and that they are threatening, and are about and intend to exercise said power and operate said caucuses in such wise as to wholly prevent these plaintiffs and each of them from bringing before the republican voters any delegates or proposed delegates favorable to their nomination.

"That if said rules and regulations as promulgated are permitted to be put in force by said defendants, as they now contemplate doing, it will result in each of said plaintiffs being prevented, unless they can control the caucuses in their respective wards, from submitting a list of delegates to be voted for at the primary election to the county convention, because, under such rules, no

candidate can submit a list of delegates to be voted for at said primary election unless such candidate can control the caucuses in the various precincts of said city of Lincoln; and that at said caucuses there is no regulation or qualification for voters, any person from any part of the city, whether republican, democrat or populist can attend such caucuses and vote; so that the right to have a list of delegates to the county convention voted for at said primary election depends upon the ability of each candidate to pack and control a caucus; and that said method of selecting delegates under said rules becomes largely a question of brute force, and that said rules and regulations are vicious, unfair and unjust.

"In consideration whereof, and inasmuch as the plaintiffs are without adequate remedy at law, and will suffer great and irreparable injury in case said defendants are permitted to carry out their wrongful and fraudulent scheme, as aforesaid, the plaintiffs pray that a temporary injunction issue, enjoining said defendants and each of them, their agents, servants, employees or representatives, from putting in force or in any manner applying said pretended rule or rules, or any other rule or rules or pretended regulations of any sort, designed to or which will operate to prevent the said plaintiffs and each of them from fairly submitting to the republican voters of said several precincts or any of them at said primary election proposed list of delegates favorable to their nominations and interests, to be voted upon, and enjoining and restraining them from printing or authorizing to use at such primary election in said precincts or any of them any form of ballot which does not contain the list of delegates in each precinct proposed by and favorable to these plaintiffs and each of them, and to be voted for along with such other proposed delegates as may be presented to said defendants, in order that a full, fair and free expression of a preference and choice of the republican voters of said several precincts may be had; that upon the final hearing of this cause, said injunction may be

made permanent, and for such other and further relief as justice and equity may require."

A general demurrer to the petition was sustained, and the suit dismissed. The plaintiffs appeal.

The doctrine that equity is conversant only with matters of property and the maintenance of civil rights, and will not interpose for the protection of rights which are merely political, is supported by an almost unbroken line of authorities. *Fletcher v. Tuttle*, 151 Ill. 41, 25 L. R. A. 143; *Sheridan v. Colvin*, 78 Ill. 237; *State v. Aloe*, 152 Mo. 466, 47 L. R. A. 393; *Giles v. Harris*, 189 U. S. 475; *In re Sawyer*, 124 U. S. 200; *Green v. Mills*, 69 Fed. 852, 30 L. R. A. 90. In the last case, the authorities in support of this doctrine are reviewed at some length. In *Giles v. Harris* it is said: "The traditional limits of proceedings in equity have not embraced a remedy for political wrongs."

A civil right is "A right accorded to every member of a district, community or nation," while a political right is "A right exercisable in the administration of government." Anderson's Law Dictionary, 905. In 2 Bouvier's Law Dictionary, 929, it is said: "Political rights consist in the power to participate, directly or indirectly, in the establishment or management of the government. These political rights are fixed by the constitution. Every citizen has the right of voting for public officers, and of being elected; these are the political rights which the humblest citizen possesses. Civil rights are those which have no relation to the establishment, support, or management of the government. These consist in the power of acquiring and enjoying property, of exercising the paternal or marital powers, and the like. It will be observed that every one, unless deprived of them by sentence of civil death, is in the enjoyment of his civil rights, which is not the case with political rights; for an alien, for example, has no political, although in full enjoyment of his civil rights." The rights, for the protection of which the plaintiffs invoke the chancery powers of the court in this case, fall squarely within the definition of political rights.

Notwithstanding the array of authorities which support
it, we should not care to commit ourselves unqualifiedly
to the doctrine that a court of equity will not under any
circumstances interfere for the protection of political
rights. But, we think it is perfectly safe to adopt the
doctrine to the extent of holding that a court of equity
will not undertake to supervise the acts and management
of a political party, for the protection of a purely politi-
cal right. We do not overlook the fact that primary
elections have become the subject of legislative regulation;
and it may be conceded that each member of a political
party has a right to a voice in such primaries, and to seek
nomination for public office at the hands of his party.
But, when he is denied these rights, or unreasonably
hampered in their exercise, he must look to some other
source than a court of equity for redress. To hold other-
wise would establish what could not but prove a most
mischevous precedent, and would be a long step in the
direction of making a court of equity a committee on cre-
dentials, and the final arbitrator between contesting
delegations in political conventions. The voters them-
selves are competent to deal with such matters without
the guiding hand of the chancellor, and it will make for
their independence, self reliance and ability for self gov-
ernment, to permit them to do so. It is true, they may
make mistakes, but courts themselves have been known
to err.

It is therefore recommended that the decree of the dis-
trict court be affirmed.

GLANVILLE, C., concurs.

By the Court: For the reasons stated in the foregoing
opinion, the decree of the district court is

AFFIRMED.

SEDGWICK, J.

It does not appear from the allegations of the peti-

tion, as quoted in the opinion, that the committee had taken the necessary steps to hold a legal primary election under the statute.

I concur in the conclusion reached but not in the reasoning employed.