## STATE, EX REL. COFFIN *v.* SUPERIOR COURT OF MARION COUNTY ET AL.

### [No. 24,882.   Filed October 27, 1925.]

1.  EQUITY.—*Court of equity has no jurisdiction of matters that are purely political.*—A court of equity has no jurisdiction to try disputed questions concerning rights that are purely political, nor to undertake the protection of such rights by issuing restraining orders and injunctions.   p. 618.

2.  EQUITY.—*Member of political party denied his rights therein or unreasonably hampered in their exercise cannot appeal to court of equity for redress.*—A member of a political party who is denied his rights therein, or is unreasonably hampered in their exercise, must look to some other source than a court of equity for redress.   p. 618.

3.  COURTS.—*Jurisdiction of circuit and superior courts to grant injunctions and restraining orders stated.*—The Constitution of Indiana gives circuit and superior courts only such jurisdiction in the matter of granting injunctions and restraining orders "as may be prescribed by law," and the statutes give them only such jurisdiction in those matters as courts of chancery had at common law, with a few exceptions.   p. 625.

4.  PROHIBITION.—*Supreme Court will issue writ of prohibition restraining circuit or superior court from acting outside its equitable jurisdiction, although it is court of law and equity.* —A writ of prohibition will be issued by the Supreme Court to restrain a circuit or superior court from acting outside of its equitable jurisdiction by issuing an injunction to control matters purely political, notwithstanding the fact that such court is a court of law as well as a court of equity.   p. 625.

5.  INJUNCTION.—*While legal and equitable actions are blended in this state, the equitable jurisdiction of the courts to grant injunctions is same as before adoption of code unless changed by statute.*—While legal and equitable actions are blended in form in this state, the principles remain the same, and a trial judge, sitting as a chancellor, has no authority to interfere by injunction where, previous to the adoption of the code, he could not do so, unless empowered by statute.   p. 625.

6.  INJUNCTION.—*Superior court without jurisdiction to issue restraining order regulating and controlling the acts of presiding officer and members of political party convention met for a distinctively political purpose.*—A superior court was without jurisdiction to grant an injunction or restraining order regulating and controlling the acts which should or should not be done by the presiding officer and members of a convention

State, ex rel., *v.* Superior Court—196 Ind. 614.

of the representatives of a political party met for a distinctively political purpose. p. 628.

7. PROHIBITION.—*Supreme Court will issue writ of prohibition against superior court forbidding issuance of order restraining political party convention from doing specified acts which are purely political.*—Supreme Court will issue writ of prohibition against a superior court forbidding it from issuing an order restraining the chairman and members of a political party convention from doing certain specified acts at said convention when met for a distinctively political purpose. p. 628.

Original action in Supreme Court seeking writ of prohibition against the Marion Superior Court and others. *Writ of prohibition made absolute.*

*Ira M. Holmes, Arthur R. Robinson, Frank A. Symmes* and *Garth B. Melson,* for petitioner.

*Roemler, Carter & Rust, Emsley W. Johnson, William Bosson, James M. Ogden* and *Fesler, Elam & Young,* for respondents.

PER CURIAM.—The principal question for consideration and decision is whether or not the equity jurisdiction of a circuit or superior court, under the Constitution and laws of the State of Indiana, extends to granting a restraining order or injunction forbidding the chairman of a local organization of a political party, who is authorized to preside at a meeting of representatives of the party for the purpose of reorganizing the "city committee" of such party, to exclude certain persons from taking part in the meeting as committeemen of their respective precincts, and forbidding him to put anybody else in the places of such persons as the committeemen and representatives of said precincts, and further commanding him to admit those persons, as representing their respective precincts, to participate in the said organization meeting and in all other meetings of the "city committee" of the party, and to recognize them as such in all meetings that the party might hold. Incidentally, the question is also presented whether or not,

if the respondent court was without jurisdiction as to these matters, a proper case is presented for issuing a writ of prohibition to control its action with respect thereto.

The relator filed a complaint for a writ of prohibition, alleging, in substance, that the time for holding a meeting of the committeemen representing precincts within the city of Indianapolis for the purpose of choosing a city chairman and effecting a reorganization of the city committee of the Republican party of that city was fixed for Saturday afternoon, January 17, 1925, at one o'clock, and that, by order of the Republican State Committee, the relator was selected to open the meeting and preside until a city chairman should be chosen; that at the primary election in May, 1924, certain persons had been returned as elected to the positions of precinct committeemen for their respective precincts lying wholly or partly within the city of Indianapolis, and had acted as such until after the general election in November, 1924; that the Republican State Central Committee had adopted certain rules (recited in the complaint) declaring certain acts to be "sufficient cause for the removal of any officer or any member of any party committee," and providing for appeals from "any ruling by a subordinate committee or chairman which affects * * * the right of any person to hold any place in the party organization," with an ultimate appeal to the state chairman, "a decision of whom shall be final and binding"; that, alleging the existence of causes within said rules, relator had caused twenty-four of the persons so acting to be removed from their positions as precinct committeemen "by action of the Republican county committee, acting through relator as its chairman," and thereafter, said committee, acting through him, appointed successors as precinct committeemen to succeed them; that the county committee had

unanimously adopted a rule declaring that relator, as county chairman, should and did have full authority to remove any and all precinct committeemen for cause, and to fill the places of all such committeemen who should refuse to carry out proper instructions and orders of the county chairman; that no appeal was taken from such removal and filling of the places of said committeemen; that on the day before the day fixed for said organization meeting, the persons so removed as committeemen by relator filed in Room 2 of the Superior court of Marion county, Indiana, their complaint against relator asking that he be enjoined from attempting to exclude them from acting as precinct committeemen at the organization meeting and elsewhere, and from putting others in their places; but that, the next day, before the hour fixed for holding said organization meeting, the said action was dismissed, and the same parties filed a suit in Room 3 of said superior court, the judge of which thereupon issued a restraining order, without notice, forbidding relator to interfere with the plaintiffs therein as precinct committeemen in the exercise of their right to vote at said meeting for the organization of the city committee and at other meetings which might be called by it, or to attempt in any way to put others in their places; that notwithstanding the meeting was to be held at one o'clock that afternoon, said judge fixed January 24, 1925, at 9:30 in the morning, as the date for a hearing on the petition for a temporary injunction, and the restraining order so issued without notice was directed to remain in force "until the notice of hearing on plaintiff's petition can be given and a hearing had thereon, and until the further order of the court"; that, on the same day, this relator, as defendant therein, prepared his motion to dissolve said restraining order, and not finding the judge of Room 3 at his court or

in the court-house at that hour, presented the motion to another judge of said superior court, who ordered that the motion be sustained, and, at fifteen minutes before one o'clock, entered an order that the restraining order "be and the same is hereby dissolved"; that said petitioners for the restraining order prayed an appeal, but two days later, on Monday, they withdrew such request, and the judge of Room 3 then made an order-book minute in his docket that "the order dissolving the restraining order is set aside.   *   *   *   Restraining order heretofore ordered reinstated in full force and effect"; that thereafter relator filed a demurrer to the complaint on which said restraining order had been obtained, pointing out that the superior court had no jurisdiction to try or determine the matter, but the judge overruled said demurrer and ruled relator to answer on a named date; and that, unless prohibited, he would try the cause and make the temporary order permanent, on a specified date, two or three days after the time of filing the petition asking for a writ of prohibition.  And that such order, if made permanent, would interfere with the relator in the performance of his duties as chairman of the local committee of his party in certain particulars specified.

The Supreme Court issued a temporary writ of prohibition forbidding the superior court to proceed further in the matter until the application could be heard and decided.  The return admits these facts substantially as alleged.  Both parties have filed briefs on the assumption that the facts stated in the complaint are substantially correct.

The rule that equity has no jurisdiction to try disputed questions concerning rights that are purely political, nor to undertake the protection of such rights by is-

1, 2.   suing restraining orders and injunctions has been long established, and is declared by author-

ities too numerous for citation, many of which are collected in text books and reference books. 14 R. C. L. 374; 21 C. J. 156, §137; 4 Pomeroy, Equity (4th ed.) §1746; Bispham, Equity (10th ed.) §37, p. 64; High, Injunctions (4th ed.) §§20b, 1312, 1313; Kerr, Injunctions (5th ed.) p. 10.

In affirming a judgment refusing to enjoin a county committee and its chairman from enforcing a rule promulgated in its name but alleged to have been adopted when only a minority of the committee, all living in one town, were present, with relation to printing ballots for use at a primary election, the Supreme Court of Nebraska said: "The doctrine that equity is conversant only with matters of property and the maintenance of civil rights, and will not interfere for the protection of rights which are merely political, is supported by an almost unbroken line of authorities (citing cases). A civil right is 'a right accorded to every member of a district, community or nation,' while a political right is 'a right exercisable in the administration of government.' Anderson's Law Dictionary, 905. In 2 Bouvier's Law Dictionary, 929, it is said: 'Political rights consist in the power to participate, directly or indirectly, in the establishment and management of the government. These political rights are fixed by the constitution. Every citizen has the right of voting for public officers, and of being elected; these are the political rights which the humblest citizen possesses. Civil rights are those which have no relation to the establishment, support, or management of the government. These consist in the power of acquiring and enjoying property, of exercising the paternal or marital powers, and the like. It will be observed that every one, unless deprived of them by sentence of civil death, is in the enjoyment of civil rights, which is not the case with political rights; for an alien, for example, has no politi-

cal, although in full enjoyment of his civil rights.' Notwithstanding the array of authorities which support it, we should not care to commit ourselves unqualifiedly to the doctrine that a court of equity will not under any circumstances interfere for the protection of political rights. But, we think it perfectly safe to adopt the doctrine to the extent of holding that a court of equity will not undertake to supervise the acts and management of a political party, for the protection of a purely political right. We do not overlook the fact that primary elections have become the subject of legislative regulation, and it may be conceded that each member of a political party has the right of a voice in such primaries, and to seek nomination for public office at the hands of his party. But, when he is denied these rights, or is unreasonably hampered in their exercise, he must look to some other source than a court of equity for redress. To hold otherwise would establish what could not but prove a most mischievous precedent, and would be a long step in the direction of making a court of equity a committee on credentials, and the final arbitrator between contesting delegations in political conventions." *Winnett* v. *Adams* (1904), 71 Nebr. 817, 99 N. W. 681.

In affirming two judgments dismissing bills brought by voters who were candidates for the office of representative in the state legislature, asking for injunctions to forbid the county clerk to issue notices of election pursuant to the provisions of a statute redistricting the state to the disadvantage of complainants, which statute was alleged to be unconstitutional, the Supreme Court of Illinois said: "From the foregoing statement of these two bills it seems to be perfectly plain that the entire scope and object of both is the assertion and protection of political, as contradistinguished from civil, personal or property rights. In both the complainant

is a legal voter, and a candidate for a particular elective office; and by his bill he is seeking the protection and enforcement of his right to cast his own ballot in a legal and effective manner, and also his right to be such candidate, to have the election called and held under the provisions of a valid law, and to have his name printed upon the ballots to be used at such election, so that he may be voted for in a legal manner. The rights thus asserted are all purely political. * * * The question then is, whether the assertion and protection of political rights, as judicial power is apportioned in this State between courts of law and courts of chancery, are a proper matter of chancery jurisdiction. We would not be understood as holding that political rights are not a matter of judicial solicitude and protection, and that the appropriate tribunal will not, in proper cases, give them prompt and efficient protection, but we think they do not come within the proper cognizance of courts of equity." *Fletcher* v. *Tuttle* (1894), 151 Ill. 41, 37 N. E. 683, 25 L. R. A. 143, 42 Am. St. 220.

In sustaining an appeal from an order granting a temporary injunction against the enforcement of a registration law of South Carolina, alleged to be void because in conflict with the Constitution of the United States, the circuit court of appeals for the Fourth Circuit, by Mr. Chief Justice Fuller, said: "It is well settled that a court of chancery is conversant only with matters of property and the maintenance of civil rights. The court has no jurisdiction in matters of a political nature, nor to interfere with the duties of any department of government, unless under special circumstances, and when necessary to the protection of rights of property, nor in matters merely criminal, or merely immoral, which do not affect any right of property (citing authorities). Neither the legislative nor the executive department, said Chief Justice Chase, in *Mississippi* v.

*Johnson,* 'can be restrained in its action by the judicial department, though the acts of both, when performed, are, in proper cases, subject to its cognizance.' 'The office and jurisdiction of a court of equity,' said Mr. Justice Gray, in *Re Sawyer,* 'unless enlarged by express statute, are limited to the protection of rights of property.' To assume jurisdiction to control the exercise of political powers, or to protect the purely political rights of individuals, would be to invade the domain of the other departments of government or of the courts of common law." *Green* v. *Mills* (1895), 69 Fed. 852, 16 C. C. A. 516, 30 L. R. A. 90 (appeal dismissed, 159 U. S. 651, 16 Sup. Ct. 132, 40 L. Ed. 293).

The fact that a statute provides for the election of precinct committeemen and defines their powers as members of the county committee and city committee, respectively, does not affect the application of the rule above declared. In an action by the general superintendent of the Illinois State Reformatory to enjoin the board of managers from wrongfully removing him from office in violation of law, for political and partisan purposes, by preferring false and unfounded charges against him in furtherance of a fraudulent conspiracy, the Supreme Court of Illinois said: "We think it clear that the trial court did not err in dissolving the temporary injunction and dismissing the bill for want of equity, as it is well settled that the title to a public office and the right to exercise its functions cannot be determined by a court of chancery unless express authority so to do is conferred upon the court by statute, the remedy being in a court of law. (Citing authorities.) * * * It is elementary that the subject matter of all chancery jurisdiction is property and the maintenance of civil rights, and that matters of a political character do not come within its jurisdiction."

*Marshall* v. *Illinois State Reformatory* (1903), 201 Ill. 9, 14, 66 N. E. 314.

And even where the city chairman of a political party had rented a hall in his own name for a convention of the precinct committeemen, paying a deposit with his own money, and had then obtained an injunction forbidding certain persons, who claimed to have been chosen as precinct committeemen at an election duly held under the provisions of a statute, to enter the hall, it was held that forcing their way into the hall to attend the meeting did not constitute contempt of court on the part of the committeemen, because the rights of property under the lease were merely incidental to the political matters involved, and a court of equity had no power by injunction to control the exercise of political rights. *People* v. *McWeeney* (1913), 259 Ill. 161, 173, 174, 102 N. E. 233, Ann. Cas. 1916B 34. In some of the cases above referred to, and in many of those cited by the text books and books of reference mentioned as collecting the authorities on this subject, the question whether or not the trial court had jurisdiction was presented by an appeal from a judgment granting an injunction, either temporary or permanent. But there are many authorities holding that where the remedy by way of an appeal is not adequate, a writ of prohibition will issue to restrain the attempted exercise of jurisdiction by issuing and enforcing a void order. Thus, where certain taxpayers filed suit to enjoin the persons appointed as election commissioners of the city of St. Louis, under the provisions of a recent act of the legislature, from qualifying and taking possession of the offices or discharging the duties thereof, alleging that said act was unconstitutional and that other persons previously appointed under the provisions of an earlier act were lawfully entitled to hold the of-

fices, and the judge of the circuit court granted a temporary injunction, as prayed, the Supreme Court of Missouri issued a writ of prohibition forbidding the circuit court to entertain jurisdiction of the suit. The court said: "The powers of the chancery court are there plainly invoked to protect by injunction purely -political rights. No such jurisdiction ever has been conceded to a chancery court, either in the Federal or state judiciary. The political rights of a citizen are as sacred as are his rights of personal liberty and property, but he must go into a court of law for them. A court of equity is a one-man power, wielding the strong force of injunction, often used in chambers and on an *ex parte* hearing. Neither in England nor America has this power been suffered to extend to political affairs. * * * Prohibition is an extraordinary remedy and will not lie where the party claiming it has adequate remedy by ordinary means. But the ordinary means that will defeat the application for this extraordinary writ must be sufficient to afford the relief the case demands." *State, ex rel.,* v. *Aloe* (1899), 152 Mo. 466, 54 S. W. 494, 47 L. R. A. 393; *Arnold* v. *Henry* (1900), 155 Mo. 48, 55 S. W. 1089, 78 Am. St. 556.

And where an injunction was asked and obtained from the circuit court, at about noon on the day of the election, forbidding several hundred election officers and the mayor, chief of police and other officers of the city of Louisville to exclude representatives of the Honest Election Democratic party from watching the count of the votes that afternoon and evening in the several precincts of the city, and, a week later, the officers were all cited for contempt of court because of having disobeyed the injunction, a temporary writ of prohibition was issued by the Kentucky Court of Appeals, staying further action in the contempt cases until the matter could be heard. After an answer had been filed by

the judge and the cause had been fully heard, the writ of prohibition was made perpetual, the court holding that the circuit court was without jurisdiction to issue the injunction, and that the Court of Appeals had power, in its discretion, to issue writs of prohibition to control the action of that court, in case the circuit court should attempt to proceed outside its jurisdiction, if adequate relief could not be afforded by way of an appeal. *Weaver, Mayor,* v. *Toney, Judge* (1899), 107 Ky. 419, 54 S. W. 732, 21 Ky. Law Rep. 1157, 50 L. R. A. 105.

The Constitution of Indiana gives circuit and superior courts only such jurisdiction in the matter of granting injunctions and restraining orders "as may 3-5. be prescribed by law." §§1, 8, Art. 7, §§161, 168 Burns 1914. And the statutes give them only such jurisdiction in those matters as courts of chancery had at common law (§§244, 1376, 1536, 1224, 1543 Burns 1926, §§236, 1433, 1472, 1204, 1479 Burns 1914, §§236, 1314, 1351, 1147, 1358 R. S. 1881), except in actions for divorce (§1109 Burns 1926, §1080 Burns 1914, §1042 R. S. 1881) and, perhaps, in some other matters having no relation to what is now under consideration. The mere fact that the court had jurisdiction of actions at law as well as suits in equity is not cause for refusing a writ of prohibition to restrain it from acting outside and in excess of its equitable jurisdiction by issuing an injunction to control matters purely political. While legal and equitable actions are blended in form in this state, the principles remain the same, and a trial judge, sitting as a chancellor, has no authority to interfere by injunction where previous to the adoption of the code he could not do so, unless he is so empowered by statute. *Weaver, Mayor,* v. *Toney, Judge, supra.*

Counsel cite and rely upon *State, ex rel.,* v. *Gleason* (1918), 187 Ind. 297, 119 N. E. 9, as authority for the proposition that since the Marion Superior Court had power to issue injunctions in proper cases, prohibition will not lie if the court had acquired jurisdiction of the parties, however erroneous the order granting the injunction may have been. The facts of that case are not set out in the opinion, but, from an examination of the records of this court, it appears that the trial court in issuing the injunction therein complained of had acted in response to a complaint which alleged that plaintiff was duly elected to the office of school commissioner of the city of Terre Haute for a term of four years, and had duly qualified and was entitled to enter upon the duties of his office as successor to a school commissioner whose term of office had expired, but that defendants, including certain of the school commissioners, had conspired and were threatening to exclude him from his said office; that this complaint for an injunction was filed on January 4, 1918, answers were filed January 21, the cause was heard on the 23, argued on the 24, and decided by granting the temporary injunction complained of on the 26, and the writ of prohibition was applied for six days later. The facts of that case are clearly distinguishable from those of the case at bar in many respects, but more especially with relation to the facts relied on as creating a special emergency that called for extraordinary relief by way of prohibition. In the course of its opinion, the court said: "It is not the policy of courts to exercise such power on slight occasion, but only in special emergency cases to prevent great impending present injury. *State, ex rel.,* v. *Superior Court* (1905), 40 Wash. 555, 82 Pac. 877, 2 L. R. A. (N. S.) 395, 111 Am. St. 925." And it concluded that:

"the complaint does not state facts sufficient to constitute a cause of action."

But in the case at bar, it is alleged in the petition and admitted by the respondents that the restraining order was issued without notice, in the forenoon of the day (Saturday, January 17, 1925) on which the meeting of precinct committeemen to elect a city chairman for the ensuing campaign was to be held at one o'clock in the afternoon, and that the matter was set for hearing on the application a week later; that the petitioners, having given notice of a motion to dissolve the order and failed to find the judge who issued it at his courtroom or in the court-house before one o'clock, procured another judge of the superior court to order it set aside, and then disregarded it in conducting the meeting; that on the next court day (Monday), the judge who issued the restraining order set aside said order purporting to vacate it, and overruled the motion asking that it be set aside, and three weeks later overruled a demurrer to the complaint for an injunction, entered a rule to answer and set the case for hearing on the merits. Such an order, directing what should be done that same afternoon in the matter of holding a meeting of precinct committeemen to take important action of a permanent character, brought relator face to face with an acute situation not even tempered by the hearing which was to be given him a week later, after the meeting was over. So far as that meeting was concerned, the order was peremptory and final. It was either valid and must be obeyed forthwith, or it was void and might be disregarded with impunity. And the trial judge thereafter having twice declared his purpose to treat it as a valid order, first by entering the rule that it be reinstated and that the motion to set it aside be overruled, and then by overruling a demurrer to the com-

plaint and setting the cause for hearing, a special emergency arose which justified relator in asking for extraordinary relief if the court was without jurisdiction to issue the restraining order, or to confirm it by a temporary injunction.

We conclude from the foregoing authorities that the superior court had no jurisdiction of the subject-matter of granting an injunction to determine in advance, and regulate and control in advance by its command in the form of a restraining order or injunction, the acts which should or should not be done by the presiding officer and members of a convention of the representatives of a political party met for a distinctively political purpose; and that the writ of prohibition forbidding it to proceed further in an attempt to do so should be made permanent and absolute.

The trial court having been without jurisdiction, this court does not have jurisdiction to decide anything more than that fact. Therefore, no opinion will be expressed concerning any of the other questions discussed in the briefs.

## MANDATE.

It is ordered, adjudged and decreed that so far as the temporary writ of prohibition heretofore issued in this cause forbids the superior court of Marion county, Indiana, to render, make or issue any restraining order, decree or judgment which restrains, commands or attempts to control the future action of relator in matters purely political, or to entertain, hear or proceed in any action based upon allegations concerning what the relator threatens, intends or proposes to do or will do in the future, unless restrained, with relation to matters purely political, said writ of prohibition is hereby made permanent and absolute.

Myers, J., concurs in conclusion.