**GRIGSBY et al. v. HARRIS et al.**

District Court, S. D. Texas, at Houston.
July 23, 1928.

No. 353.

Elections ⌾126(4)—Excluding negroes from participating in party primary elections held not violation of constitutional right (Rev. St. Tex. 1925, art. 3107; Const. U. S. Amends. 14, 15).

Action of Democratic state executive committee, pursuant to Rev. St. Tex. 1925, art. 3107, in excluding negroes from participation in primary elections, *held* not in violation of right guaranteed by Const. U. S. Amends. 14, 15.

In Equity. Suit by J. B. Grigsby and others against Guy Harris and others. Decree for defendants.

See, also, 27 F.(2d) 945.

R. D. Evans, of Waco, Tex., for plaintiffs.
Stevens & Stevens, of Houston, Tex., for defendants.

HUTCHESON, District Judge. Plaintiffs, alleging themselves to be resident citizens of Harris county, Texas, and of the United States, qualified voters under the election laws of the state of Texas and of the Democratic political faith, bring their petition for injunction against defendants, members of the Democratic executive committee of Harris county, Texas. They allege that the state Democratic executive committee by resolution has provided that only qualified white voters may participate in the Democratic primary election, and that in doing so the committee "acted under color of a state statute which in itself does not authorize such resolution"; that plaintiffs are not white, and that the enforcement of such rule, which plaintiffs allege defendants are preparing to carry out, will deprive them of a constitutional right and privilege guaranteed to them by the Fourteenth and Fifteenth Amendments to the Constitution of the United States, to wit, the right to vote without discrimination against them on account of color, to plaintiffs' irreparable injury, and for which they have no adequate remedy at law.

Plaintiffs praying for a temporary restraining order, a rule issued to show cause why the writ prayed for should not be granted, and, defendants having appeared, the matter stands for disposition upon their motion to dismiss for want of equity and upon the facts admitted by defendants and those adduced by plaintiffs in support of their prayer.

Defendants' answer to the rule filed subject to their motion to dismiss puts plaintiffs upon proof as to their being qualified voters, and denies that they are Democrats; but it admits that the state executive committee did pass, and the defendants are preparing to enforce, the following resolution:

"That all white Democrats who are qualified voters under the Constitution and laws of Texas, and who subscribe to the statutory pledge provided in article 3110, Revised Civil Statutes of Texas, and none other, be allowed to participate in the primary elections to be held July 28, 1928, and August 25, 1928, and further that the chairman and secretary of the state Democratic executive committee be directed to forward to each Democratic county chairman in Texas a copy of this resolution for observance."

Plaintiffs established that they were qualified voters in Harris county, Texas; that they desired to affiliate with the Democratic party, and that they would do so, but for the resolution and actions of the defendants above set out—in short, all of the material allegations of their petition, and the matter stands for decision by me upon the points of law: (1) Whether the action of the state executive committee of the Democratic party, and of the defendants pursuant to it, is obnoxious to the invoked amendments. (2) If it is, can equity relieve?

Plaintiffs on the first point say: "The statute law of Texas has covered the subject of primary elections, and has removed the control of same from the forum of political parties and placed it within the control of the state by express legislation"; that the executive committee of the Democratic party is in effect recognized by and acting as the agent of the state, and that therefore, "so far as the Fourteenth and Fifteenth Amendments to the Constitution of the United States are concerned, as these amendments have been construed by the Supreme Court of the United States, the action of the state executive committee and the county chairman and the precinct chairman is state action."

They say that the legislative intent to make the test of Democratic party affiliation a matter of state rather than party action is evidenced by the enactment in May, 1923, at the second called session of the Thirty-Eighth Legislature of a law then designated article 3093a, reading as follows: "Article 3093a. All qualified voters under the laws and Constitution of the state of Texas, who are bona fide members of the Democratic party, shall be eligible to participate in any Democratic

party primary election, provided such voter complies with all laws and rules governing party primary elections; however, in no event shall a negro be eligible to participate in a Democratic party primary election held in the state of Texas, and should a negro vote in a Democratic primary election, such ballot shall be void and election officials are herein directed to throw out such ballot and not count the same"—and later by the enactment in June, 1927, of an act repealing same and enacting new article 3107, reading as follows: "Article 3107. Every political party in this state through the state executive committee shall have the power to prescribe the qualifications of its own members and shall in its own way determine who shall be qualified to vote or otherwise participate in such political party: Provided that no person shall ever be denied the right to participate in a primary in this state because of former political views or affiliations or because of membership or nonmembership in organizations other than the political party."

They say that, while the present article does not in terms effect or authorize the effecting of the discrimination against plaintiffs here complained of, the declaration that the executive committee shall have power to prescribe qualifications, taken in connection with the assertion in the very article of legislative control over party qualifications in at least two particulars, amounts not to a recognition of power already existing in the party committee as such to so designate, but to a delegation by the Legislature of its own power of designation.

The defendants say that the second statute evidences, not as plaintiffs contend, a continuity of purpose on the part of the Legislature to continue a meretricious union of the state with the Democratic party, attempted by those who were responsible for the first act, but, on the contrary, a return to legal sanity by an entire withdrawal of the state from a usurped field. They say that article 3093a, in terms depriving a citizen of the right to vote in a Democratice primary because of his color was not only violative of the Fourteenth and Fifteenth Amendments, and therefore void ab initio, but also contrary to the public policy of this state, as it placed the state of Texas in the apparent position of having loaned its governmental machinery to a particular party, a position not only repugnant to every upright, law-abiding citizen of Texas, irrespective of party, but which was in the very teeth of the decision of its Supreme Court; that in Waples v. Marrast, 108 Tex. 11, 184 S. W. 183, L. R. A. 1917A, 253, that court, speaking through Chief Justice Phillips, according to the "straitest sect" a Democrat, in a case denying the right of a state to finance a primary election, declared:

"A political party is nothing more or less than a body of men associated for the purpose of furnishing and maintaining the prevalence of certain political principles or beliefs in the public policies of the government. * * * According to the soundness of their principles and the wisdom of their policies they serve a great purpose in the life of a government. But the fact remains that the objects of political organizations are intimate to those who compose them. They do not concern the general public. They directly interest, both in their conduct and in their success, only so much of the public as are comprised in their membership, and then only as members of the particular organization. * * * They constitute no governmental agency. * * * To provide nominees of political parties for the people to vote upon in the general elections is not the business of the state. It is not the business of the state, because in the conduct of the government the state knows no parties and can know none. * * * Political parties are political instrumentalities. They are in no sense governmental instrumentalities."

When, therefore, the enormity of this statute, apparently attempting to effect a legal union between the Democratic party and the state, was called to the attention of the Legislature by the challenge of the law in Nixon v. Herndon, 273 U. S. 536, 47 S. Ct. 446, 71 L. Ed. 759, the Legislature decisively repealed and expunged it from the statute books of Texas, and substituted for it the declaration of sound principles contained in the present statute, that every political party in this state has the power to prescribe the qualifications of its own members, and shall in its own way determine who shall be qualified to vote or otherwise participate in such election, for the purpose of bringing the statute law of Texas, not only in accord with the Constitution of the United States, but with the Constitution and public policy of the state of Texas, and in consonance with the thought and conscience of just men; that therefore the two statutes invoked by plaintiffs, instead of pointing to the conclusion which they assert, that the state executive committee in the matters complained of is exercising power delegated by the Legislature, and not inherent power, point to the

contrary conclusion, that the state has by legislative declaration affirmed the inherency of party power, and struck down the misguided effort of a past Legislature to illegally interfere in party concerns.

With defendants' position in the matter I wholly agree, for I know of no principle, neither have I found or been cited to any authority, which affirms the proposition that the constitution and maintenance of the business as such of political parties is any proper matter of public or governmental concern. This view finds support, not only in the law, but in the history of this country, and always will find support while free institutions are maintained. That the public has an interest in the lawful and proper conduct of primary elections is of course undoubted, and that for their proper regulation, to secure a fair and orderly choice, the state has full power to provide, no one denies.

It is quite another thing, however, to say that the action of political parties through their governing board is or may be directed by the state, or that the governing committees of any political party, in acting in or for the party interest, can in any sense be said to be acting as officers of the state. If the splendid declaration of principles in the Waples Case, supra, needs support ' other than its appeal to reason and common sense, the following authorities holding the same way may be examined: Koy v. Schneider, 110 Tex. 369, 218 S. W. 480, 221 S. W. 880; Cunningham v. McDermett (Tex. Civ. App) 277 S. W. 218, where the precise contention made here by plaintiffs is considered and rejected: "Appellant contends that the Legislature, by prescribing how party primaries must be conducted, turned the party into a governmental agency. * * * With this proposition we cannot agree. * * * 'Political parties are political instrumentalities. They are in no sense governmental instrumentalities.'" Winnett v. Adams, 71 Neb. 817, 99 N. W. 681; State ex rel. Smith v. Kanawha County, 78 W. Va. 168, 88 S. E. 662, 20 A. L. R. 1030, and note; Stephenson v. Board of Elections, 118 Mich. 396, 76 N. W. 914, 42 L. R. A. 214, 74 Am. St. Rep. 402; Phillips v. Gallagher, 73 Minn. 528, 76 N. W. 285, 42 L. R. A. 222; Kearns v. Howley, 188 Pa. 116, 41 A. 273, 42 L. R. A. 235, 68 Am. St. Rep. 852.

The action complained of by plaintiffs being purely party action, as to which the holding is uniform that, like other voluntary associations, they have complete delectus personarum, and may select or reject as members whom they will, it is unnecessary to decide the second point, whether, if plaintiffs' rights had been invaded, equity could grant relief, other than to say that the point is greatly involved in doubt, the books being full of cases declaring, as in Winnett v. Adams, 71 Neb. 817, 99 N. W. 681, the doctrine that equity is concerned only with matters of property and the maintenance of civil rights, and will not interfere for the protection of rights which are merely political, being supported by Giles v. Harris, 189 U. S. 475, 23 S. Ct. 639, 47 L. Ed. 909; In re Sawyer, 124 U. S. 200, 8 S. Ct. 482, 31 L. Ed. 402; Green v. Mills (C. C. A.) 69 F. 852, 30 L. R. A. 90.

Other cases to the same effect are Kearns v. Howley, 42 L. R. A. 235, where it was held an injunction against adding names to a political committee, or striking names therefrom, would not be granted, when the committee does not own, or pretend to own, or derive any benefit or value from, anything held by them in common, although the committee was elected at a primary election, and the law recognizes political parties, so far as to prescribe the duties of officers at such primaries. A case perhaps most strongly and without qualification asserting the want of power in a court of equity is Walls v. Brundidge, 109 Ark. 250, 160 S. W. 230, Ann. Cas. 1915C, 980. An interesting opinion to the same effect is that of Judge West in Chandler v. Neff (D. C.) 298 F. 515.

Against this view is the excellently reasoned case of Gilmore v. Waples, 108 Tex. 167, 188 S. W. 1037, in which, reviewing the cases for and against, the Supreme Court of Texas declares that, "if there is no provision of law interdicting the proposed action of" a party "committee, no legal right of the plaintiff can be said to be threatened with impairment, and the case presents" but "a party dispute. * * * On the other hand, if the proposed action of the committee is prohibited by law, a judicial question is presented; and, if such action threatens" the legal rights of plaintiff for the relief "of which no * * * legal remedy exists, his right to equitable relief cannot be denied," and he reasons, I think with great power, that, while equity will not grant relief where the right asserted is a political, as opposed to a legal, right, equity will grant relief where the right claimed rests upon law, even though the subject-matter of that right be political, and I incline to think that those cases which have so uniformly affirmed the want of power in a court of equity to grant relief are all cases

which either were, or by the court deciding them were held to be, cases where plaintiff's rights were only political, and therefore extralegal. That the political character of the subject-matter of the right could not prevent relief in equity I think more reasonable, and I incline to think, with Mr. Justice Holmes, that "the objection that the subject-matter of the suit is political is little more than a play upon words." Nixon v. Herndon, 273 U. S. 536, 47 S. Ct. 446, 71 L. Ed. 759. And while that expression is used in a law case, his failure in Love v. Griffith, 266 U. S. 33, 45 S. Ct. 12, 69 L. Ed. 157, to suggest the fatal obstacle, that the subject-matter was political, tends to support the view that the Supreme Court of the United States, in a proper case, would agree with the holding of the Supreme Court of Texas, in Gilmore v. Waples, that equity could grant relief.

Since, however, I have concluded that the plaintiffs have shown no invasion of their legal rights, a decision by me whether they could get relief, if they had shown it would be supposititious, and therefore most probably unsound, and I rest the decision of this case upon the conclusion reached as to the first point propounded, that plaintiffs have failed to show that any legal right of theirs has been invaded or infringed.