Linda NOLAN, Appellant–Plaintiff,

v.

Richard TAYLOR in his Capacity as the Chairman of the Martin County Democrat Central Committee,

and

John Hunt,

and

The Martin County Democratic Central Committee, Appellees–Defendants.

No. 51A05–0608–CV–442.

Court of Appeals of Indiana.

April 20, 2007.

Thomas D. Seal, Richmond, IN, Attorney for Appellant.

Fremont O. Pickett, Shoals, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

*Case Summary and Issue*

Linda Nolan appeals the trial court's order denying her Petition to Challenge

Results of Caucus, dissolving a preliminary injunction issued by the trial court, and declaring John Hunt the pro tempore Clerk of the Martin Circuit Court. On appeal, Nolan raises many issues,[1] but we find one issue dispositive: whether the trial court had jurisdiction to hear Nolan's challenge to the results of a political caucus held to appoint a pro tempore court clerk. Concluding that the trial court did not have jurisdiction, we affirm in part, and remand with instructions to dismiss.

*Facts and Procedural History* [2]

In 2002, Debra S. Christmas, a member of the Democratic political party, was elected as the Martin County Circuit Court Clerk. On October 18, 2005, Christmas tendered her resignation, which was to be effective on January 6, 2006. At this and all relevant times, James Richard Taylor was the Chairman of the Martin County Democratic Central Committee, as well as a committeeperson. Pursuant to Indiana statute,[3] Taylor convened a caucus of the Martin County Democratic precinct committeepersons on November 19, 2005, for the purpose of appointing a new clerk. Also pursuant to Indiana statute,[4] Taylor mailed notice of this caucus to all the committeepersons who were eligible to participate. Two of the committeepersons to whom Taylor mailed notice had moved out of the precinct they represented. According to the Rules of the Indiana Democratic Party ("Party Rules"), "[i]f a committeeperson moves out of his or her precinct and the County chair has knowledge of the same, the chair shall notify said committeeperson by registered mail of his retirement in absentia as committeeperson." Party Rule 11(*l*)(1). Both committeepersons received notice of the caucus at their new residence. Neither had been notified of their retirement in absentia, and both participated in the caucus.

The night before the caucus, committeeperson James Sorrells resigned and informed Taylor that he would not be attending the caucus. Sorrells testified that Taylor told him that Sorrells' vice committeeperson would not be allowed to vote as his proxy. Taylor testified that he did not make this statement, but did state that he told others on the day of the caucus that he would not allow Sorrells' vice committeeperson to vote.[5] Neither Sorrells nor

1. In her lengthy Statement of the Issues, Nolan indicates that she is raising eleven issues. However, it is apparent that many of these "issues" are merely challenges to particular factual findings or legal conclusions reached by the trial court, and that Nolan is actually raising only the four issues identified in her Argument section. We remind counsel that the Statement of Issues "shall *concisely* and particularly describe each issue presented for review." Ind. Appellate Rule 46(A)(4) (emphasis added).

2. Nolan's Statement of the Case contains primarily argument, and does not inform this court of the course of the proceedings or the disposition of the issues raised. *See* Ind. Appellate Rule 46(A)(5) ("This [Statement of the Case] shall briefly describe the nature of the case, the course of the proceedings relevant to the issues presented for review, and the dispo-

sition of these issues by the trial court....."). The Appellees' brief does not contain a Statement of the Case, but indicates that they agree with Nolan's statement.

3. Indiana Code section 3–13–6–3 states: "A vacancy in the office of clerk of the circuit clerk that was last held by a person elected or selected as a candidate of a major political party of the state shall be *filled* by a caucus under IC 3–13–11." Indiana Code section 3–13–11–3 indicates that the county chairman of the same political party of the person elected is to give notice of the caucus.

4. *See* Ind.Code § 3–13–11–4.

5. Taylor was under the impression that in order for a vice committeeperson to vote as a proxy, the committeeperson was required to give seventy-two hours notice. This require-

his vice committeeperson attended the caucus. Additionally, committeeperson Robin Haulk failed to attend the caucus, leaving a total of sixteen committeepersons in attendance.

Prior to the caucus, Taylor prepared hand-made ballots on index cards that directed committeepersons to either "mark box for one only" or "mark one box only." The four candidates were listed with empty boxes next to the names. At the caucus, Taylor passed these ballots out to the committeepersons, who were all seated near each other. After the committeepersons had voted, Taylor collected the ballots and announced the votes. Nolan and Hunt each received eight votes.[6] At this point, pursuant to Indiana statute, Taylor broke the tie by voting again for Hunt.[7]

On December 28, 2005, Nolan filed a Petition to Challenge Results of Caucus, along with a motion for preliminary injunction and motion for temporary restraining order, naming as defendants Taylor, in his capacity as Chairman of the Martin County Democratic Central Committee, Hunt, and the Martin County Democratic Committee (collectively, the "Appellees").[8] A hearing on the injunction and restraining order was held on either January 5 or 6, 2006, in front of Judge R. Joseph Howell, of the Martin Circuit Court.[9] Following the hearing, Judge Howell extended the temporary restraining order and issued the preliminary injunction.[10] On January 17, 2006, Judge Howell issued findings of fact and conclusions of law, some of which Nolan quotes in her brief. However, as

---

ment existed under previous statutes, but did not exist at the time of the caucus. *See* Ind. Code § 3–13–11–9(b).

**6.** Nolan spends a significant portion of her brief arguing that Taylor forgot to vote, and that the original vote was actually seven to eight in her favor. Although some testimony may support her argument, significant evidence, including the testimony of Taylor and other committeepersons, indicates that Taylor did not forget to vote. This issue is irrelevant on appeal, as the basis for our decision is jurisdictional.

**7.** "The chairman shall break any tie vote that occurs in the caucus." Ind.Code § 3–13–11–8.

**8.** In another violation of the appellate rules, Nolan has failed to file an appendix. *See* Ind. Appellate Rule 49(A) ("The appellant shall file its Appendix with its appellant's brief."). However, we have a copy of the chronological case summary, which, ironically, was filed by Hunt, in his capacity as clerk of the court. Without this chronological case summary, we would have no evidence as to the nature or disposition of the case. *Cf. Hughes v. King,* 808 N.E.2d 146, 148 n. 3 (Ind.Ct.App.2004) (noting that when a party fails to include the chronological case summary in the record, we have "no way of determining whether the

parties' statements of the case are accurate"). We also do not have a copy of any petitions, motions, pleadings, or memorandums filed by the parties with the trial court. Were we not dismissing the appeal for lack of jurisdiction, we may have been unable to fully address the merits based on Nolan's failure to provide an adequate record to facilitate our review. *Cf. Yoquelet v. Marshall County,* 811 N.E.2d 826, 830 (Ind.Ct.App.2004) (recognizing that "[w]ithout the designated evidence, which the trial court relied upon in drafting its summary judgment order, we cannot review the trial court's decision"); *Hughes,* 808 N.E.2d at 147 ("Although we prefer to dispose of cases on their merits, where an appellant fails to substantially comply with the appellate rules, then dismissal of the appeal is warranted.").

**9.** The chronological case summary indicates that this hearing took place on January 6, and the transcript indicates that this hearing took place on January 5.

**10.** Again, without copies of this order or the motions, we do not know exactly what the Appellees were restrained or enjoined from doing. However, based on what we do have in the record, we feel it safe to assume that the effect of these orders was that Hunt was prevented from assuming his position as clerk.

our record does not contain a copy of these findings, we will not consider their content. *See Hughes,* 808 N.E.2d at 148 (referring to appellant's citations to documents not provided to the court as "meaningless"). At some point, the Appellees filed a motion to disqualify Judge Howell. This motion was granted pursuant to Indiana Trial Rule 79,[11] and on January 18, 2006, Judge William E. Weikert, Judge of Dubois Circuit Court, assumed jurisdiction over the case as Special Judge of Martin Circuit Court. Another hearing was held on March 1, 2006, in front of Judge Weikert. The court issued its judgment, along with findings of fact and conclusions of law on March 24, 2006, denying Nolan's petition, dissolving the preliminary injunction, and declaring Hunt the pro tempore clerk. Nolan now appeals the trial court's order.

## Discussion and Decision

■■■■ Although the Appellees do not argue on appeal that the trial court lacked jurisdiction,[12] "[i]f the circuit court had not jurisdiction of the general subject-matter of the action, that fact could be raised at any state of the proceedings, and, in fact, must be taken cognizance of by this court, whether formally raised or not, if apparent on the face of the record." *Bd. of Comm'rs of Marion County v. Jewett,* 184 Ind. 63, 67, 110 N.E. 553, 555 (1915). Further, if "the lower court was without power to entertain the action and decide the questions involved, this court is equally

without power to review the correctness of its decision of such questions. Jurisdiction of the general subject-matter cannot be waived, and cannot be conferred by the parties." *Id.*

■■■■ It has long been the rule that the judicial branch will not address purely political questions. *See State ex rel. Marion County Democratic Comm. v. Superior Court of Marion County,* 214 Ind. 322, 322, 15 N.E.2d 379, 379 (1938). "The rule that equity has no jurisdiction to try disputed questions concerning rights that are purely political, nor to undertake the protection of such rights by issuing restraining orders and injunctions, has been long established, and is declared by authorities too numerous for citation." *State ex rel. Coffin v. Superior Court of Marion County,* 196 Ind. 614, 618–19, 149 N.E. 174, 175 (1925); *see also Porter County Democratic Party Precinct Review Comm. v. Spinks,* 551 N.E.2d 457, 459 (Ind.Ct.App.1990) ("Courts of equity have no jurisdiction to give injunctive relief with respect to matters or questions of a political nature unless civil property rights are involved and will not interfere to enforce or protect purely political rights.").

■■■■ The right to hold a political office is not a civil or property right, but is instead a privilege. *State ex rel. Seal v. Superior Court of Knox County,* 221 Ind.

11. The chronological case summary is not entirely clear as to when this motion was actually filed or granted.

12. The Appellees' Brief is completely devoid of cogent argument as to any issue. Their brief consists primarily of statements copied from Nolan's brief and short responses that do not cite to any authority. Many of the responses do not address Nolan's arguments and some merely state, "this issue is without merit," and offer no explanation whatsoever. The only citation in the Appellees' brief besides those in the language quoted from No-

lan's brief is: "There was no objections [sic]. I.C. 3–12–6–2 by any one [sic]." Appellee's Brief at 4. This statement is in response to Nolan's argument that the trial court erroneously ruled that "the form of the ballot and the method of carrying out the balloting process is not prescribed by statute." *Id.* The statute cited by the Appellees refers to the time limit to file a petition for a recount in a general election, and we fail to see its relevance to Nolan's argument, or to this case in general.

36, 43–44, 46 N.E.2d 226, 229 (1943) (citing *Hay v. White*, 201 Ind. 425, 169 N.E. 332 (1930)). Therefore, absent statutory authority, the courts are without the power to issue injunctions or restraining orders or to otherwise interfere with the results of a caucus. *See Coffin*, 196 Ind. at 625, 149 N.E. at 177 ("[A] trial judge sitting as a chancellor has no authority to interfere [in political matters] by injunction ... unless he is so empowered by statute."); *State v. Marion Circuit Court*, 199 Ind. 4, 9–10, 145 N.E. 883, 885 (1925) (absent a statute, rule, or regulation conferring specific right upon city chairman, circuit court was without jurisdiction to determine whether right to serve as presiding officer belonged to chairman or another).

■ Here, no statute provides an individual the right to appeal the result of a caucus held to appoint a pro tempore clerk. The legislature has provided a statutory procedure for individuals to contest a nomination or election of a local office. *See* Ind.Code § 3–12–8 *et seq.* However, as statutory language makes clear, the result of a caucus to fill a vacancy is not an election or a nomination, but an appointment. *See, e.g.*, Ind.Code § § 3–13–11–1 ("Selections made [pursuant to a caucus] are *appointments pro tempore* for the purposes of Article 2, Section 11 of the Constitution of the State of Indiana.") (emphasis added), 3–13–6–3 ("The person who is *appointed* holds office for the remainder of the unexpired term and until a successor is elected and qualified.") (emphasis added). The difference between this appointment and an election is not merely semantic. Indeed, an elected official is chosen by the eligible voting population, while the person appointed to fill a vacancy is chosen by select officers belonging to the political party to which the elected official belonged. Thus, a person elected is the choice of the people, while a person ap-

pointed is the choice of a political party. *Cf. State ex rel. Garn v. Bd. of Election Commr's of Marshall County*, 167 Ind. 276, 283–84, 78 N.E. 1016, 1018 (1906) (discussing the distinction between the results of an election and the placement of candidates on the ballot: " 'The question is not, who shall be chosen to any particular public office? That is for the voters of all political parties to determine at the polls. It is simply, who shall represent the organization as its nominees? And certainly the determination of that question should be controlled by the action of the party itself[.]' " (quoting *State ex rel. Howells v. Metcalf*, 18 S.D. 393, 100 N.W. 923 (1904))).

It is true that the legislature has prescribed certain procedures that the caucus must follow in making its appointment. *See* Ind.Code §§ 3–13–11 *et seq.* However, it does not follow that because there is a statutorily prescribed procedure, the courts have jurisdiction to hear a complaint that a political organization did not follow its own rules with regard to the procedure. *See Coffin*, 196 Ind. at 622, 149 N.E. at 175 ("The fact that a statute provides for the election of precinct committeemen and defines their powers ... does not affect the application of the rule [that a court has no jurisdiction to hear questions concerning political rights]"). Also, the fact that Nolan complains the caucus did not follow certain aspects of the statutorily prescribed procedure by not voting by "secret ballot," *see* Ind.Code § 3–13–11–10, or by allowing Taylor to "unilaterally" establish the caucus rules does not confer jurisdiction to the courts. Although the legislature has mandated that the caucus follow certain procedures, it is not the province of the judicial branch to enforce compliance with these directives absent statutory authority to do so. *See Coffin*, 196 Ind. at 622–23, 149 N.E. at 175 (citing with approval *Marshall v. Board of*

*Managers of Illinois State Reformatory,* 201 Ill. 9, 14, 66 N.E. 314, 315 (1903)), which dismissed for lack of jurisdiction a complaint by the reformatory's superintendent alleging the board had removed him from office in violation of law). Although statutory rules govern the caucus procedure, it is still the province of the political party to ensure enforcement of those rules, and courts will not interfere by way of injunction or restraining order absent specific statutory authority. *See id.* at 177.

The legislature has provided political party State Committees with a judicial remedy to enforce compliance with the party's rules or resolutions. *See* Ind.Code §§ 3–6–1–13, 14. It does not follow that an individual has a right to enforce party rules. *See State v. Marion Circuit Court,* 199 Ind. at 9, 145 N.E. at 885 ("The mere fact that the state committee might bring an action of mandamus to enforce its rules, regulations or resolutions does not operate to give the circuit court jurisdiction of a suit by one to enforce what he claims to be his political rights not shown to be authorized by any action of the state committee, city committee, or given by statute."). Also, in providing this recourse for state committees, the legislature indicated that the committee must bring the action in its own name. Ind.Code § 3–6–1–13(3). Such a requirement provides further evidence of the lack of judicial recourse for an individual claiming that another individual failed to follow the Party Rules.

The fact that the circuit court did not have jurisdiction to hear Nolan's complaint does not mean that those aggrieved by the procedure or result of a caucus have no recourse. Disputes that arise within a political party are to be referred to the statutory party organization. *State ex rel. Blaize v. Hoover,* 210 Ind. 215, 216, 2 N.E.2d 391, 392 (1936). The Party Rules

themselves prescribe the procedure for a remedy for an alleged unjust political practice. Under the Party Rules, controversies arising at the precinct committee level are first to be brought before the county committee, and may be appealed to the district committee. Party Rule 20(a), (b). The Party Rules also indicate that the State committee may accept original jurisdiction over cases that may affect the rights of a party member. Party Rule 20(e). Also, as indicated above, if the State committee is unable to satisfactorily resolve any member or group's failure to follow its rules, it may bring a judicial action in its own name.

Because the trial court lacked jurisdiction, we have no jurisdiction to decide anything more than that fact. *See Coffin,* 196 Ind. at 628, 149 N.E. at 178. Therefore, we express no opinion as to the allegations of misconduct and procedural irregularities raised in Nolan's brief. We affirm the trial court's act of dissolving the preliminary injunction and remand with instructions that the trial court enter an order of dismissal as to Nolan's petition.

### Conclusion

We hold that the trial court had no jurisdiction to hear Nolan's petition or motions for preliminary injunction and temporary restraining order. Therefore, the trial court properly dissolved the preliminary injunction. We remand with instructions that the trial court enter an order of dismissal as to Nolan's petition.

Affirmed in part, and remanded.

BAKER, C.J., and DARDEN, J., concur.